Thelma Schampon, Administratrix of the Estate of Frank Schampon, Deceased, Appellee, v. Louis Speis and Kipps Express and Van Company, Appellants.

**Gen. No. 38,703.**

Opinion filed April 20, 1936.

JOHN A. BLOOMINGSTON, of Chicago, for appellants.

CHARLES C. SPENCER and RICHARD M. SPENCER, both of Chicago, for appellee; JEFFERSON D. BURRUS, of Milwaukee, Wis., and HOWARD G. DEMING, of Chicago, of counsel.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

On the evening of August 25, 1932, Frank Schampon, hereafter called plaintiff, was killed in an accident involving his own Chevrolet automobile and a truck belonging to defendant Kipps Express and Van Company, a corporation, driven by defendant Louis Speis. Plaintiff's administratrix brought suit and upon trial had a verdict for $2,500, and from the judgment thereon defendants appeal.

The accident happened about 6:45 o'clock p. m. daylight saving time, underneath a viaduct which passes over Ashland avenue, a street running north and south, between 40th and 41st streets. The viaduct is approximately 125 feet from north to south, the roadway approximately 40 feet wide, running to a sidewalk elevated about six feet above the roadway on either side; in the center of the roadway running from north to south are 10 steel posts or pillars standing about 13 feet apart; north- and south-bound street car tracks run under the viaduct near the row of pillars.

Plaintiff was driving a new Chevrolet which he had acquired that day and was driving for the first time; his widow testified he had had some previous experience driving automobiles of friends. He was going south on Ashland, passing under the viaduct; the roadway was wet and he seemed to lose control of his

car and, turning toward the left, going about 35 miles an hour, it crashed into the fourth pillar from the south of the viaduct; the bumper and the entire frame were bent back; when it struck the pillar the rear end swung around toward the west so that the Chevrolet was standing at an angle across the street car tracks. Defendants' truck also was going southward under the viaduct and crashed into the standing Chevrolet, pushing it about 15 feet to the south; plaintiff was found lying near this pillar unconscious and so severely injured that he died shortly thereafter.

The theory of plaintiff's counsel is that plaintiff got out of his car uninjured, when the truck came upon him and crushed him against the side of the Chevrolet. Counsel for defendants asserts that plaintiff was injured by the collision of his car with the pillar, and that in any event the evidence shows that plaintiff's car turned across the pathway in front of the truck and so near it that a collision was unavoidable.

Two vital questions are presented: (1) What interval of time elapsed between the striking of the pillar by the Chevrolet and the striking of the Chevrolet by the truck? (2) Was the plaintiff injured by the collision of his car with the pillar or by the truck when it ran into the Chevrolet?

The man who could best answer these questions, as he had the best opportunity to see the details of the occurrence, was defendant Speis. He was placed upon the witness stand but plaintiff objected to his competency, which objection the court properly sustained under section 2, ch. 51, Evidence (Ill. State Bar Stats. 1935). This is sometimes called the "Dead Man's Statute." Wigmore on Evidence (2nd ed.), sec. 578, p. 1005, says that this rule of incompetency rests on "some vague metaphor in place of a reason" and aptly asks, can it be more important to save dead men's estates "than to save living men's estates from loss by

lack of proof?'' The meagreness of testimony as to the instant occurrence emphasizes this criticism.

These observations are pertinent with relation to the ruling of the trial court denying defendants' motion for a continuance of the trial in order to obtain the testimony of Raymond Davies, said to be an eyewitness of the occurrence. In the motion for a continuance is incorporated a statement by Davies to the effect that upon this occasion he was driving his car south on Ashland avenue when, about 100 feet north of the railroad viaduct, he saw a new car pass on his right going about 50 miles an hour; that when it reached the viaduct it started to pass on the right of a large truck going under the viaduct; that when the car struck the wet pavement it started to sway and finally shot to the left in the path of the truck, struck a pillar ''and the driver fell out to the pavement.'' Davies said in the statement that at all times he had a very clear view of the occurrence.

It may be that the affidavit for a continuance did not show necessary diligence in attempting to procure in apt time the testimony of Davies, who was said to be in Denver, Colorado. We are of the opinion, however, that the circumstances called for a liberal interpretation of defendants' motion, leaning toward that construction which would further justice by giving a jury opportunity to consider all the obtainable evidence bearing on the occurrence.

A witness, William Parker, testified on behalf of plaintiff that he was standing at the northeast corner of 41st street and Ashland avenue, south of the viaduct; that he heard the crash as the Chevrolet struck the pillar; that at this time he saw defendants' truck about 150 to 175 feet from the north end of the viaduct; that he walked 40 or 50 feet toward the Chevrolet when the truck coming southward crashed into it; his statement was that there were two crashes—that made

by the Chevrolet striking the pillar and a subsequent crash when the truck struck the Chevrolet; he testified that after the Chevrolet struck the pillar he saw a person get out of it from the left side. This tends to support the theory of plaintiff's counsel.

Defendants' counsel very earnestly attacks in many details the testimony of Parker, and in many points the witness seems to have taken inconsistent positions. But an examination of his testimony rather tends to make uncertain any statement or inference that plaintiff, intentionally and uninjured, got out of the Chevrolet and stood by its side momentarily before the truck came. Parker also repeatedly said he could not say whether the person "walked out, jumped out, fell out, or what happened," that all he could say was that a person came out of the left-hand door.

Defendants say the collision of the Chevrolet with the pillar and the truck striking the Chevrolet were virtually simultaneous. Two witnesses heard a crash; one witness was just emerging from under the north end of the viaduct, and the other, driving in the opposite direction, was just emerging from under the south end of the viaduct; they both testified that they heard but one crash, that there were not two crashes, and on investigating saw a truck, as one of them said, "piled into a Chevrolet," and saw plaintiff lying on the roadway.

Two other men were driving a truck northward under the viaduct and were about opposite the colliding vehicles; they saw the truck running in the street car tracks and the Chevrolet to its right; saw the Chevrolet swing in front of the truck with about two feet of clearance, the Chevrolet going about 35 miles an hour; it crashed into a pillar of the viaduct and at the same time the truck struck the Chevrolet; there was but one crash—"It all happened like one." Without further detailing the stories of these witnesses, their

testimony by its greater weight supports the theory of the defendants that the collision of the Chevrolet with the pillar and the collision of the truck with the Chevrolet were virtually simultaneous.

Defendants' counsel forcefully argues that the nature of plaintiff's injuries demonstrates that they were caused by impact with the steering wheel of the Chevrolet when it collided with the pillar. A doctor testified that the "chest was caved in" and the pubic bones in front broken, but no injury to the illii on the sides. There is no convincing evidence as to how plaintiff received these injuries. If he fell out of his Chevrolet, as seems to be indicated, he probably was injured by his car running into the pillar. However, the present state of the record leaves this point largely a matter of conjecture.

The amount of the verdict, $2,500, suggests that the jury compromised on the question of liability. Plaintiff at the time of the accident was 37 years old, in normal health, married and earning about $40 a week. Under such circumstances if his death was caused solely by the negligence of the defendants a much larger verdict would be justified.

We hold that the greater weight of the evidence shows that plaintiff, having lost control of his car, turned in front of defendants' truck when so near to it that, when his car ran into the pillar, it was unavoidably struck by the truck. The finding of the jury that defendants were guilty of the negligence charged and that plaintiff was free from contributing negligence is against the manifest weight of the evidence. The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*

MATCHETT and O'CONNOR, JJ., concur.