[No. 32225. Department One. May 6, 1953.]

ADAMS MARINE SERVICE, INC., *Respondent*, v. ETHEL G. FISHEL *et al.*, *Appellants.*[1]

*Metzger, Blair, Gardner & Boldt*, for appellants.

*Metzler & McCormick*, for respondent.

HILL, J.—This is an action for specific performance of an oral contract to convey land. The defendants are Ethel G.

[1]Reported in 257 P. (2d) 203.

Fishel, widow of Charles R. Fishel, deceased, and the executors of his estate. The defendants deny the making of any contract and by cross-complaint seek to quiet the widow's title to the land (she having acquired, during the course of the probate proceedings, the interest of the only other heir) and, on her behalf, to recover damages for trespass on the land in question and damages to other property.

In his lifetime, Dr. Charles R. Fishel and his wife owned lots 2 and 3, block 5, Day Island, Pierce county, Washington, being waterfront property for the most part below the high-tide line. The westerly boundary of the lots is Island boulevard, and they extend easterly toward deep water. Immediately west of these lots and across Island boulevard is residence property now belonging to Mrs. Fishel which prior to 1946 had been occupied by Dr. and Mrs. Fishel as their home. The plaintiff, Adams Marine Service, Inc., owns property east of Island boulevard and south of lots 2 and 3, on which it carries on a boat servicing and moorage business.

The acquisition and dredging of the easterly, or deep-water portion of lots 2 and 3 would increase the moorage facilities of the corporation. So, early in 1948, Ernest G. Adams, then the principal stockholder, president, and manager of the corporation, negotiated with Dr. and Mrs. Fishel for the purpose of acquiring title to the easterly portions of those lots. Whether those negotiations resulted in a definite and certain oral agreement which subsequent developments rendered enforcible, is the question to be determined in this litigation.

The trial court found that there was a definite oral agreement between the corporation and the Fishels, whereby the Fishels were to sell and the corporation was to purchase the easterly portions of lots 2 and 3. The terms of the oral agreement, as found by the trial court, were that the westerly portion of lots 2 and 3 would be retained by the Fishels; that this portion would have an area sufficient to provide two legal building sites, one for each lot, each having a minimum of four thousand square feet; and

"That it was agreed between the parties to said oral agreement that in consideration of the sale of the said property

by the FISHELS' to the plaintiff, the plaintiff corporation was to:

"(a) At its own expense, dredge the easterly portion of said Lots 2 and 3 extending into the Sound or Bay;

"(b) At its own expense, to deposit the dredgings so obtained upon the upland or westerly portion of said Lots 2 and 3;

"(c) At its own expense, to bulldoze and level off on a plane with Island Boulevard, . . . the dredgings so deposited on the uplands;

"(d) At its own expense, to remove the old Fishel boat house and derelict logs from the premises. . . .

"(e) To pay to the FISHELS' the sum of $1,000.00.

"That upon the performance of the conditions and provisions above set forth by the plaintiff, and the payment of $1,000.00, as above provided, it was agreed that the FISHELS' were to make, execute, and deliver to the plaintiff, a good and sufficient warranty deed conveying the said premises to the plaintiff, free and clear of all encumbrances."

The court also found:

"That the plaintiff relying upon said oral agreement and pursuant thereto, at an expenditure of approximately $1300.00 and with the full knowledge and express oral consent of ETHEL G. FISHEL, did dredge the property as agreed upon between the 9th and 18th (inclusive) of March, 1948. That the plaintiff did further with no objection from anyone, bulldoze and level off said dredgings on the westerly or upland of said Lots 2 and 3 as agreed upon at an expenditure of approximately $120.00. That the plaintiff did, at its own expense, and with full knowledge and consent of ETHEL G. FISHEL, and as agreed upon, remove the Fishel boathouse and old logs upon the premises. That thereafter the plaintiff did tender to the said ETHEL G. FISHEL in her individual capacity and as co-executor of the estate of her deceased husband, CHARLES R. FISHEL, the sum of $1,000.00, which tender was refused. That the said sum of $1,000.00 was deposited prior to trial with the Clerk of Pierce County, Washington, where said sum remained and still is on deposit with said Clerk . . . .

"That the plaintiff in reliance upon said oral agreement and as a result thereof, made extensive and permanent and costly improvements on his own properties, which improvements and facilities were made and designed for use only in connection with the use of the property here in question.

"That in addition thereto, the plaintiff made permanent

improvements on the property itself that is here in question pursuant to and in reliance upon said oral agreement.

"That at all times since the oral agreement was entered into by the parties as hereinabove set forth and during all of the period of said improvements, the property in question was utilized and within the sole and exclusive possession of the plaintiff in accordance with the oral agreement. That no objections whatsoever were made thereto or to the possession of the plaintiff, except as may be inferred by this action itself."

The trial court, having found that the plaintiff, Adams Marine Service, Inc., herein called "the corporation," was entitled to a decree of specific performance, dismissed the cross-complaint. The defendants appeal.

Appellants vigorously urge that four elements essential to a binding contract are left uncertain:

*Re claimed uncertainty No. 1:* It is clear to us that the parties contemplated the retention by the Fishels of an area large enough for two building sites. The trial court found that the description in the conveyance which the corporation seeks to have executed satisfies this requirement and is in accord with and pursuant to the agreement of the parties.

*Re claimed uncertainty No. 2:* There is no apparent basis for the contention by the appellants that the corporation guaranteed that the material to be placed on the portion of the lots retained by the Fishels would remain there or that the sites would be suitable for building without being retained by piling and bulkheading.

*Re claimed uncertainty No. 3:* We are convinced that the matter of moorage for Dr. Fishel's boat was not intended to be a covenant running with the land, but was a courtesy to be extended to him.

*Re claimed uncertainty No. 4:* Common sense indicates that the reservation of the north fifteen feet of lot 2 was not intended as an open waterway, but to provide access to deep water if and when the building sites were sold or developed.

The agreement between the Fishels and the corporation, as testified to by Ernest G. Adams, contained the essential elements of a valid contract for the sale and purchase of the portion of lots 2 and 3 described in the findings and

decree. If the trial court believed his testimony, and it did, the standards of clarity and certainty which we have heretofore laid down for the establishment of the terms, character and existence of such contracts have been fully met. (See, for statement of standards, *Golden v. Mount*, 32 Wn. (2d) 653, 671, 203 P. (2d) 667 (1949), quoting *Payn v. Hoge*, 21 Wn. (2d) 32, 39, 149 P. (2d) 939 (1944); and *Groeneveld v. Dean*, 40 Wn. (2d) 109, 111, 241 P. (2d) 443 (1952), quoting *Granquist v. McKean*, 29 Wn. (2d) 440, 445, 187 P. (2d) 623 (1947).)

We turn, therefore, to a consideration of the assignment of error which challenges the competency of Ernest G. Adams as a witness.

Appellants rely upon the provision in RCW 5.60.030 (Rem. Rev. Stat., § 1211) which is as follows:

"No person offered as a witness shall be excluded from giving evidence by reason of his interest in the event of the action, as a party thereto or otherwise, but such interest may be shown to affect his credibility: *Provided*, That in an action or proceeding where the adverse party sues or defends as executor, administrator, or legal representative of any deceased person, or as deriving right or title by, through, or from any deceased person, or as the guardian or conservator of the estate of any insane person, or of any minor under the age of fourteen years, then a party in interest or to the record, shall not be admitted to testify in his own behalf as to any transaction had by him with, or any statement made to him, or in his presence, by any such deceased or insane person, or by any such minor under the age of fourteen years: . . ."

The authorities are generally agreed that qualification or disqualification of a witness depends upon his interest at the time he testifies. 58 Am. Jur. 178, 181, Witnesses, §§ 280, 287. Respondent urges that, having disposed of all of his stock by *bona fide* transactions, Mr. Adams does not come within the bar of the quoted statute. Appellants contend that, since Mr. Adams owned stock at the time the suit was commenced, he cannot, by disposing of it prior to trial, qualify himself as a witness. The trial court found:

"That at the time of the incorporation of said plaintiff

[respondent] and for sometime thereafter, the said ERNEST G. ADAMS was the President and Manager thereof, and its principal stockholder. That after the date of the oral agreement hereinafter mentioned and after the death of the said CHARLES R. FISHEL, the said ERNEST G. ADAMS disposed of all of his stock in said corporation and resigned his position as an officer, employee and director thereof. .

"That all sales of stock made by ERNEST G. ADAMS were bonafide for valuable consideration and in good faith and were not made for the purpose of qualifying ERNEST G. ADAMS as a witness to avoid the bar of the 'dead man' statute. That at the time of the trial of this cause and of the testimony of ERNEST G. ADAMS, he had no connection whatsoever with the plaintiff corporation, either as a stockholder, officer, or an employee. He had no pecuniary interest whatsoever in the outcome of this litigation, and was in all respects competent to testify as a witness for and on behalf of the plaintiff as to transactions had with the deceased, CHARLES R. FISHEL, while ERNEST G. ADAMS was an officer and a stockholder of the plaintiff corporation."

This precise question has not heretofore been before this court, although the case of *Spotts v. Westlake Garage Co.,* 116 Wash. 255, 199 Pac. 294 (1921), comes close.

In the case of *Friedrich v. Martin,* 294 N. Y. 588, 63 N. E. (2d) 586, 163 A. L. R. 1210 (1945), it appears that during the course of a trial the principal stockholder of a corporation which had brought an action for breach of contract against the personal representative of a deceased person, was held to be an interested person and was disqualified from testifying as to the transactions with the decedent. A recess was taken, during which he sold all of his stock, and he was then permitted to testify. The court of appeals approved the action of the trial judge in permitting the testimony to be received, saying:

"Although there is no decision in this court on the precise question, we find the other courts of this State and the writers in substantial agreement that such a transfer of stock, even during the trial, is effective to remove the disqualifications. 'When it was proved that the witness had transferred all his stock, he was then devoid of any interest in the event of the suit, which is the point of inquiry when

a witness is presented. . . .' (*Gilbert v. Manchester Iron Manufacturing Co.*, 11 Wend. 627, 628 . . . )."

An annotation dealing with the problem is found in 163 A. L. R. 1225. It is there stated:

"While there are a few cases in which a contrary conclusion was reached, in most of the cases in which the question has arisen, the courts have held that where one owning stock in a corporate party transferred or disposed of his stock he was no longer incompetent as a witness on the ground that he was an 'interested' party, in an action by or against the personal representative of a decedent."

With that viewpoint we are in accord.

Had Mr. Adams owned stock in the respondent corporation at the time he testified, he would have been disqualified. *Carter v. Curlew Creamery Co.*, 16 Wn. (2d) 476, 489, 134 P. (2d) 66 (1943), and authorities there cited; *McLean v. Archer*, 32 Wn. (2d) 234, 244, 201 P. (2d) 184 (1948). But, there being no issue here as to the good faith of the transactions whereby Adams disposed of his stock and interest in the corporation, he was not disqualified as a witness by reason of his former interest in and active management of the respondent corporation.

Appellants urge further, however, that Adams has an interest in the result of this action, and that his testimony was in favor of himself, because, if he could by his testimony in this case convince the trial court that there was a contract to convey the easterly portions of lots 2 and 3 to the corporation and that the placing of the dredged material on the westerly portion of those lots was in pursuance of the contract, he could plead the judgment establishing the contract as being *res judicata* of any action against him for trespass in consequence of the dredging and the disposition of the dredged materials. Stated affirmatively, appellants are saying that, if they prevail in this action and it is held that there was no contract, they can also maintain an action against Adams for trespass. Does this make Adams a "party in interest" within the contemplation of the statute?

The general purpose of the enactment of RCW 5.60.030 (*cf.* Rem. Rev. Stat., § 1211) was to abolish the exclusion of witnesses on the ground of interest, and to permit their interest to be shown for the purpose of affecting their credibility. The proviso with which we are here concerned is in most states the only surviving disqualification based upon interest.

An article in 22 Wash. L. Rev. 211 (1947) begins:

"The 'Dead Man Statutes' of the several states, which exclude testimony by interested parties in certain cases, stand in the unique position of being condemned by all the modern writers on the law of evidence."

The author quotes, in support of that statement, 2 Wigmore on Evidence (3rd ed.) 697, § 578; Morgan, "The Law of Evidence, 1941-45," 59 Harv. L. Rev. 481, 512 (1946); McCormick, "Tomorrow's Law of Evidence," 24 A. B. A. J. 507, 511 (1938); Model Code of Evidence, comment, 92 (1942). Some courts join the "modern writers on the law of evidence" in their denunciation of what Wigmore calls "a relic of the past." *Omlie v. O'Toole,* 16 N. D. 126, 112 N. W. 677 (1907); *Corbett v. Kingan,* 19 Ariz. 134, 166 Pac. 290 (1917); *Freeman v. Berberich,* 332 Mo. 831, 60 S. W. (2d) 393 (1933); *Schampon v. Speis,* 285 Ill. App. 23, 1 N. E. (2d) 499 (1936).

Whatever may be "Tomorrow's Law of Evidence," we are here concerned with our present statute; any modification or change therein must be by the legislature. The interest which will work a disqualification of a witness under this statute must be a direct and certain interest in the outcome of the litigation, the test being whether he will either gain or lose by the direct legal operation and effect of the judgment of the court in the action in which his competency is challenged. *Swingley v. Daniels,* 123 Wash. 409, 415, 212 Pac. 729 (1923), quoting 28 R. C. L. 504. We recognize that we have, following the textwriters and annotators, sometimes elaborated our statement of the test for the interest which disqualifies, but the test as here stated is the one which we have actually applied and beyond which we do not care to go. The mere contingency that

one might be subjected to an independent claim or suit, depending upon the outcome of the action in which he is called as a witness, is not a disqualifying interest within the purview of RCW 5.60.030. *Sackman v. Thomas*, 24 Wash. 660, 64 Pac. 819 (1901); *O'Toole v. Faulkner*, 34 Wash. 371, 75 Pac. 975 (1904); see, also, annotation in 88 A. L. R. 248, and cases there discussed.

We conclude that Mr. Adams was a competent witness; that the oral agreement between the corporation and the Fishels was established with certainty and definiteness; that the corporation, relying thereon, has been in possession of the property since March 9, 1948, and has made substantial changes and expenditures on it, and has made permanent and costly improvements on its other property designed for use only in connection with the property here in question; and that the corporation is entitled to a decree of specific performance of the oral agreement, as found and directed by the trial court.

We are also in accord with the trial court's finding that the value of Mrs. Fishel's property has been enhanced and not depreciated by the acts of the respondent corporation; however, it has not been necessary to discuss the issue of damages.

As an addendum, we would point out that if Mr. Adams had been held to be a "party in interest" under the statute and so disqualified, we would have here another glaring example of the injustices which have resulted in the widespread criticism of the "dead man" statute. The negotiations for the contract were not between Mr. Adams and Dr. Fishel, but between Mr. Adams and Dr. and Mrs. Fishel; Mrs. Fishel was one of the contracting parties and was present at all times during the negotiations. Her version of the conversations negatived the existence of a contract. The reason usually given for the statutory prohibition, to prevent a person from testifying because death has sealed the lips of his adversary, has no application.

*Fulkerson v. Thornton*, 68 Mo. 468 (1878), was an action for damages for breach of an alleged contract for building a church. The plaintiff alleged that, after commencement

and partial construction of the building, he had been prevented from completing it. On the appeal from a judgment for the plaintiff, the court said:

"Objection was made to plaintiff testifying on the ground that as Wm. T. Thornton, Sr., one of the alleged contracting parties, was dead, plaintiff was an incompetent witness. This objection was, we think, properly overruled. Thornton, the deceased, was not the sole contracting party; that party was composed of Thornton and Hitch, the latter being alive at the time of trial. The legal party to the contract did not consist of a single individual, but of two persons— Thornton and Hitch. If the contract had been made with Thornton alone, and he was dead at the time of trial, a widely different question would be presented . . . . The reason of the statutory prohibition, is the prevention of one person testifying where death has sealed the lips of his adversary; a reason which cannot possibly apply where there are other persons, still alive, who were co-contractors with the decedent, cognizant of all the facts as well as he was, able, therefore, to testify in opposition to the testimony of the witness objected to as being incompetent because of the death of one of the co-contractors. As the reason for the rule does not exist, no more does the rule."

Not having access to the Missouri statute of that date, we have no means of comparison with our own, which we have had occasion to remark differs from any other we have been able to find. *O'Connor v. Slatter*, 46 Wash. 308, 310, 89 Pac. 885 (1907). Under our statute, we apparently must continue to disqualify a "party in interest" as a witness even when, as the Missouri court pointed out, the reason for the disqualification is nonexistent. See annotations, 90 A. L. R. 1377 (1934), and 22 A. L. R. (2d) 1068 (1952).

The judgment appealed from is affirmed.

GRADY, C. J., MALLERY, WEAVER, and OLSON, JJ., concur.