[No. 2391–3. Division Three. October 3, 1978.]

RALPH FIES, ET AL, *Appellants,* v. BETTY STOREY, *Respondent.*

414

*McSherry & Ellis* and *Jack McSherry,* for appellants.

*Dano, Cone, Fraser & Gilbreath* and *Brian J. Dano,* for respondent.

ROE, J.—Plaintiff Beatrice Storey Fies is the daughter of Kate Storey and William Storey, Sr., who died in 1952. They also had two sons, Earl Storey and William Storey, Jr., who died in 1973. (Any further mention of William Storey in this opinion refers to William Storey, Jr.) Bette Storey, the defendant, is the widow of William Storey, Jr. Thus, the contest is between sisters–in–law.

This is an adverse possession case. The subject property contains a larger and a smaller house. William and Bette bought the subject property in 1946 from a third party; they lived in the larger house until about 1954. In 1955 or 1956, Kate Storey moved into the smaller house on the subject property. At nearly the same time, perhaps as much as a year before, William and Bette moved to a house they had built on some other property (the "East End" property) then owned by Kate. Kate had lived on the subject property for about a year when, with permission from William and Bette, she moved from the smaller to the

larger house. Kate deeded the East End property to William in 1965; on December 29, 1967, William in turn deeded the subject property to his mother Kate. William's wife Bette did not sign the deed and claims that she never knew of it. This deed from William to Kate was recorded the same day at William's request. Both of these deeds recite a nominal consideration.

In 1974 (less than 7 years after the invalid quitclaim deed from William to Kate), Bette Storey ousted a tenant from the smaller house; plaintiff claims that Kate Storey protested but was too ill to pursue the matter in court. On July 24, 1975, 7 1/2 years after the date of William's quitclaim deed to Kate, Kate gave plaintiff Beatrice Fies a quitclaim deed to the subject property. In December of 1975 Kate went to Seattle to live with plaintiff Beatrice Fies and her husband; she died there in July of 1976. Plaintiff claims that Kate did not "move" there, because she took no furniture; however, the trial court found that she "moved out."

In September 1976, defendant Bette Storey entered the larger house and took three small pieces of furniture that her deceased husband had built long ago. She also installed a new lock on the door. Plaintiff claims that defendant also took certain other personal property including Kate's rental and tax records. Plaintiff, through her agent Earl Storey, removed Bette's new lock and installed one of her own.

Plaintiff Beatrice Fies thus claims through the deed she received from her mother Kate. Since the deed from William to Kate was not signed by William's wife Bette, it was not sufficient to pass title to community real estate, *Rustad v. Rustad,* 61 Wn.2d 176, 377 P.2d 414 (1963); consequently, plaintiff claims by adverse possession. Defendant Bette Storey counterclaimed alleging trespass.

The trial court dismissed the case at the close of plaintiff's evidence, in effect finding that she had no prescriptive rights to the subject property. Defendant answered plaintiff's alleged adverse possession by claiming that Kate's occupation had at all times been permissive; the trial court

so found. The plaintiff's rights depend, of course, on Kate's rights.

Plaintiff's first alleged ground of error is the trial court's exclusion of certain income tax returns as hearsay and as not being within the exception provided by the Uniform Business Records as Evidence Act, RCW 5.45.020.[1] Plaintiff offered tax returns of Kate Storey and of William and Bette Storey to show that Kate had, and defendant had not, declared as income the rents from the smaller house. These returns were prepared from information in Earl Storey's possession; Earl Storey prepared some of the returns, and others were prepared by the Cle Elum Bookkeeping Service. The returns not only show who declared and paid taxes on the rental income, but also reflect who paid the real estate taxes. The trial court apparently rejected the tax returns because Earl Storey had not signed them as the preparer:

> I have ruled they are not business records unless he [Earl] has signed as the preparer. If they are and he has had them in his possession at all times, since the original is sent in, fine, they would qualify as business records, but as I understand the rule, they wouldn't unless he is listed as the preparer on those returns, on those copies.

The trial court refused to admit any of the returns even though several of them were stamped as having been prepared by the Cle Elum Bookkeeping Service.

■ The tax returns are, of course, hearsay. *See, e.g., Standard Oil Co. v. Moore,* 251 F.2d 188 (9th Cir. 1957). Exceptions to the hearsay rule are as well established as the rule itself. The trial court rejected the tax returns of defendant Bette Storey even though her failure to declare

---

[1]RCW 5.45.020:

"A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

the rent as income could be construed as an admission against interest.

Nothing in RCW 5.45.020 requires that a business record be signed, nor that business records must be from a full-time business. For example, a moonlighting accountant's records would satisfy the conditions of the statute as much as those of an established firm. Here, the person who actually prepared some of the returns, and who was custodian of the information from which they were prepared, was ready, and in fact tried, to testify to their authenticity. The person who prepares a business record need not be present to testify, *State v. Rutherford,* 66 Wn.2d 851, 405 P.2d 719 (1965); in fact, the statutory exception exists to allow admission of reliable records when the preparer is not available. *Cf.* Fed. R. Evid. 803(6). Even in a criminal case, *State v. Kreck,* 86 Wn.2d 112, 542 P.2d 782 (1975), where there was possible conflict with the Sixth Amendment right of confrontation, a report was admitted although identified by a person who was not the preparer. In *Seattle v. Heath,* 10 Wn. App. 949, 520 P.2d 1392 (1974), the court recognized the admissibility of computer printouts. The witness identifying the record was neither the custodian nor the preparer, but was an otherwise "qualified witness" as defined by the statute. Further, the heavy civil and criminal sanctions which may arise from false statements on tax returns, and the IRS's methods of cross-checking, would significantly aid the probative value of tax returns in a case such as this. Thus, we believe that the court erred in not admitting these tax returns. Since the returns speak for themselves as to what they purport to show, it was not necessary that plaintiff make an offer of proof of their contents. Also, it does not appear that defendant ever denied their authenticity.

Plaintiff also alleges as error the trial court's exclusion of certain testimony under the dead man's statute, RCW 5.60.030.[2] The trial court prevented Beatrice Fies and her

---

[2]RCW 5.60.030:

husband Ralph, both of whom are parties in interest, from testifying directly as to conversations with Kate Storey, offering to show her intent to hold the subject property adversely as against all the world. It also prevented 'Earl Storey from similarly testifying.

■ The trial court misconstrued the scope and purpose of the dead man's statute.

> The scope of this . . . rule excludes the testimony of the *survivor of a transaction with a decedent,* when offered *against* the latter's estate.

(Italics ours.) 2 J. Wigmore, *Evidence* § 578, at 695 (3d ed. 1940). Its purpose is to prevent invasion of a deceased person's estate, or of the interest of one claiming through a decedent, because the lips of the dead are sealed and cannot rebut testimony unfavorable to their cause.

> Our statute renders a party–in–interest incompetent to testify to transactions with a deceased when his adversary represents or claims through the deceased.

*Diel v. Beekman,* 7 Wn. App. 139, 153, 499 P.2d 37 (1972). In the instant case, none of the excluded testimony fell within the bane of the dead man's statute because it was offered not against the claim made through Kate Storey's estate but rather on its behalf.

In *McFarland v. Department of Labor &. Indus.,* 188 Wash. 357, 62 P.2d 714 (1936), a man who had suffered an industrial injury subsequently committed suicide, which the

---

"No person offered as a witness shall be excluded from giving evidence by reason of his or her interest in the event of the action, as a party thereto or otherwise, but such interest may be shown to affect his or her credibility: *Provided, however,* That in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, or as the guardian or limited guardian of the estate or person of any incompetent or disabled person, or of any minor under the age of fourteen years, then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased, incompetent or disabled person, or by any such minor under the age of fourteen years: *Provided further,* That this exclusion shall not apply to parties of record who sue or defend in a representative or fiduciary capacity, and have no other or further interest in the action."

surviving spouse, to claim a pension, was able to attribute to the prior injury. Error was assigned, grounded on the dead man's statute, to the trial court's refusal to strike the widow's testimony respecting family occurrences and declarations of the deceased. The court affirmed. Even assuming that the widow was an adverse party, it held that the statute did not apply and stated:

> The object of that statute is to prevent persons whose interests are adverse to the estates of deceased or insane persons from testifying to transactions had with, or statements made by, such deceased or insane persons. But the statute does not seek to prevent, nor does it prohibit, an interested witness from testifying on behalf, or in favor, of the estate of a deceased or insane person. . . . The statutory rule was formulated in recognition of the fact that, when the lips of the one who is said to have made the statement, or with whom the transaction is alleged to have been had, are sealed in death, it becomes difficult, and often impossible, to rebut such adverse testimony. Hence, the testimony of interested witnesses in such cases is excluded. Further than that, the statute does not go.

(Citations omitted.) *McFarland v. Department of Labor & Indus., supra* at 362–63.

*McGugart v. Brumback,* 77 Wn.2d 441, 463 P.2d 140 (1969), discussed waiver of the dead man's statute, holding that use of the interrogatory process did not constitute such waiver. In that action, plaintiff sued the defendant's estate to recover compensation for goods and services rendered decedent during his lifetime. The estate submitted interrogatories to plaintiff concerning his alleged transactions with the decedent; the question was whether propounding such interrogatories had waived the estate's right to use the statute as a shield. This case proceeds upon recognition of the principle that the estate could waive its right to prevent the plaintiff from introducing testimony as to transactions with the decedent.

This principle is also involved in the instant case. Plaintiff Beatrice Fies claims to derive title through Kate Storey;

therefore, she is, in the language of the statute, "the adverse party," and defendant Bette Storey is the "party-in-interest" who shall not testify in behalf of her own claim about conversations with Kate. Plaintiff does not claim through William Storey; she claims only through Kate, whose claim is adverse to that made through William. Defendant Bette Storey is the party whom the statute renders incompetent to testify as to conversations with Kate when such testimony seeks to disprove Kate's deed and adverse possession claim. Plaintiff, claiming through the decedent, is not barred by the dead man's statute from testifying as to transactions or conversations with Kate. But once plaintiff introduces such testimony, then the defendant is no longer at a disadvantage because the statute, having thus been waived, would no longer operate. *McGugart v. Brumback, supra.* If the statute were an absolute bar against both parties, then there could be no waiver.

The trial court seems to have been persuaded that Earl Storey was a party in interest because he is interested in the family's financial affairs, as the following colloquy indicates:

> MR. DANO: He said a brother to a party adverse to the estate. Certainly, he is in that position right now where he sits. Secondly, the interrogatories, which I assume the Court has had a chance to read, and the complaint of plaintiff, talks about the grand scheme they have, testifying where Earl bought the property then put the titles in other people's names, certainly, he becomes a party in interest. The rule proscribes a party in interest, and he certainly is a party in interest, if all those allegations are true, because he certainly is interested to see the grand design is completed and thereby, he certainly is interested in the outcome.
>
> . . .
>
> THE COURT: Well, I am concerned because here are blood relatives fighting the widow of a deceased blood relative, in effect, and Mr. Storey notoriously has not concealed but he has spread around his funds in such a way no creditor ever has been able to reach him, to my

knowledge, in this county. I don't know. It is certainly suspect.

To assume that there was a grand scheme or design, and that Earl either created it or has primary responsibility to carry it out, only shows that Earl is interested in the result, but does not mean that he is a party in interest within the meaning of the statute.

> The interest which will work a disqualification of a witness under this statute must be a direct and certain interest in the outcome of the litigation, the test being whether he will either gain or lose by the direct legal operation and effect of the judgment of the court in the action in which his competency is challenged.

*Adams Marine Serv., Inc. v. Fishel,* 42 Wn.2d 555, 562, 257 P.2d 203 (1953).

■ Defendant also objects that the proffered testimony was hearsay. *McFarland v. Department of Labor & Indus., supra,* recognized the general rule that self–serving declarations made out of the presence of the other party are not admissible, but held that rule inapplicable because the declarations were not offered to establish the truth of the facts declared, but were merely evidence of the declarant's insanity. Since an adverse possession claim requires more than mere possession, being "characterized by a certain state of mind," *Rognrust v. Seto,* 2 Wn. App. 215, 219, 467 P.2d 204 (1970), Kate's state of mind is at issue in this case; thus, testimony respecting conversations with her, offered to show her state of mind, is material. The trial court erred in excluding the testimony.

■ Since we must reverse the trial court's judgment for the reasons set forth above, we will also consider possible error which might arise again upon retrial. Plaintiff claimed adverse possession under both the 10–year statute RCW 7.28.010, and the 7–year color–of–title statute RCW 7.28.070.[3] Although the trial court found that Kate's possession began as permissive use, that finding was based

---

[3]RCW 7.28.070:

upon erroneous exclusion of testimony respecting her intent. Considering the exchange of deeds between Kate and her son William, the evidence could show that Kate intended to hold the property adversely early enough to satisfy the 10–year statute.

> Entry by one claiming title under a parol grant or exchange is adverse and not permissive, and evidence as to the grant is immaterial *except as it bears on the character of the entry and occupation of the possessor.*

(Italics ours.) *Barclay v. Tussey,* 259 Ark. 238, 242, 532 S.W.2d 193, 196 (1976).

In any event, Kate's possession appears to have been adverse as against all the world at least since 1967, when she received the invalid quitclaim deed. Assuming her possession was permissive until then, acceptance and recordation of an outright and unrestricted deed from the owner is inconsistent with permissive use or tenancy.

> While the instrument need not be recorded, recordation does establish the intention to claim the property adversely to the owner.

*In re Estate of Williams,* 73 Cal. App. 3d 141, 147, 140 Cal. Rptr. 593, 596 (1977), citing *Johns v. Scobie,* 12 Cal. 2d 618, 86 P.2d 820 (1939). Such color of title dispenses with the need for other proof of a hostile or adverse claim, *In re Estate of Williams, supra.* It also has been said that disclaimer of title from the owner with whose permission the claimant originally entered the premises will change such a permissive use to an adverse one. *Lawse v. Glaha,* 253 Iowa 1040, 114 N.W.2d 900 (1962), and cases cited. Kate's having

---

"Every person in actual, open and notorious possession of lands or tenements under claim and color of title, made in good faith, and who shall for seven successive years continue in possession, and shall also during said time pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title. All persons holding under such possession, by purchase, devise or descent, before said seven years shall have expired, and who shall continue such possession and continue to pay the taxes as aforesaid, so as to complete the possession and payment of taxes for the term aforesaid, shall be entitled to the benefit of this section."

received such color of title from the owner thus operates as that "distinct and positive assertion of a right adverse to the owner" which is required to dispel the presumption that permissive use does not ripen into adverse use, *Washburn v. Esser,* 9 Wn. App. 169, 171, 511 P.2d 1387 (1973).

We note also that the color–of–title statute does not require "adverse" or "hostile" possession; color of title itself establishes these elements, which are still required under the 10–year statute. The only thing required of the claimant's attitude is that the claim be "made in good faith," RCW 7.28.070.

> [I]t has been the universal holding of this court that a void deed is color of title, starting the running of the statute of limitations.

*Miller & Sons v. Simmons,* 67 Wash. 294, 296, 121 P. 462 (1912), and cases cited. In effect, since Kate possessed color of title, the burden must shift to defendant to show that her possession remained permissive after 1967. Thus, the trial court's findings of fact fail to support its judgment.

The judgment is reversed and the cause remanded.

MUNSON, C.J., and McINTURFF, J., concur.