[No. 16806–1–I.   Division One.   May 18, 1987.]

M. E. EARNHEART, ET AL, *Respondents*, v. JOHN R. CARLSON, ET AL, *Defendants*, JACK T. BELL, *Appellant*.

*Paul Stocker* and *Dominic L. Bacetich*, for appellant.

*Mark A. Rowley* and *Garvey, Schubert, Adams & Barer*, for respondents.

PEKELIS, J.—Jack T. Bell appeals the trial court's judgment quieting title to real property obtained by adverse possession in Knud H. Olsen and Shirley I. Olsen. Bell contends that the trial court admitted the testimony of M. E. Earnheart regarding John R. Carlson's statements and actions concerning the property line between the Olsen property and the Bell property in violation of RCW 5.60-.030. Bell contends that without Earnheart's testimony, substantial evidence does not support the trial court's finding of adverse possession. We affirm.

## FACTS

Prior to 1957 John R. Carlson and Eleanor C. Carlson owned real property located in Snohomish County, Washington. In 1957 the Carlsons sold part of the property to Merle Earnheart and Eva Earnheart and retained the other part. Mr. Earnheart testified that at the time of the sale,

Mr. Carlson identified the eastern boundary of the property as just east of an apple tree and running "between an iron monument on the other side of the alley fronting the three properties and a post on a fence on the northern border of the properties."

In 1959, the Carlsons constructed a summer home on the property they had retained. Mr. Earnheart testified that at the time of the construction, Mr. Carlson told him that he was constructing his home within 5 feet of the Earnhearts' eastern property line. That same year, Mr. Earnheart built a level parking space on part of the southeastern portion of his property (the disputed Parcel A) by hauling in two truckloads of fill to build up the bank. The Earnhearts parked their car in the parking space while they stayed in their summer home and stored their boat and trailer in the parking space during the winter months.

The Earnhearts maintained Parcel A by weeding, cutting the grass, pruning the shrubbery, and annually pruning and spraying the apple tree. During the time the Carlsons occupied their property, Mrs. Carlson complained to the Earnhearts that neighborhood children were picking apples from the Earnhearts' apple tree and in so doing, trampling Mrs. Carlson's flowers located just east of the Carlsons' property line. Mrs. Carlson asked the Earnhearts to cut down the apple tree; the Earnhearts refused.

The Carlsons sold their portion of the property in 1974 to Bell by real estate contract. Bell testified that the apple tree was bothersome because it was infested with caterpillars and partially blocked the view from his living room window. In 1981, Bell obtained a survey of his property. The survey showed that he held title to Parcel A. Within a few months of the survey, Bell cut down the apple tree. In 1982, the Earnhearts sold their property to the Olsens by real estate contract, quitclaiming all their interest, if any, in Parcel A.

The Olsens brought an action against Bell and his vendors, the Carlsons, to quiet title in Parcel A, claiming that they had acquired title by adverse possession. The Olsens

joined the Earnhearts as plaintiffs because they held a vendor's interest in Parcel A by virtue of their real estate contract with the Olsens. Based on the evidence presented, the trial court found that the Earnhearts exercised actual, uninterrupted, open, notorious, hostile and exclusive possession of Parcel A from 1957 through 1981. The trial court also found that the Carlsons and Bell had actual notice of the Earnhearts' hostile possession and acquiesced in their possession by requesting that the Earnhearts cut down the apple tree and by permitting them to park their car and store their boat on Parcel A. Accordingly, the trial court quieted title in Parcel A in the Olsens, subject to an easement in favor of Bell for the existing utility lines and sewer drain fields.

## ANALYSIS

The only issue on appeal is whether the trial court should have excluded Mr. Earnheart's testimony regarding Mr. Carlson's statements and actions concerning the property line as violative of RCW 5.60.030 (the deadman's statute). The deadman's statute provides:

> [I]n an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, or as the guardian or limited guardian of the estate or person of any incompetent or disabled person, or of any minor under the age of fourteen years, then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased, incompetent or disabled person, or by any such minor under the age of fourteen years . . .

RCW 5.60.030. The deadman's statute excludes testimony of the survivor of a transaction with the decedent offered by an interested party against the decedent's estate. *Wildman v. Taylor*, 46 Wn. App. 546, 549, 731 P.2d 541 (1987); *In re Estate of Davis*, 23 Wn. App. 384, 385, 597 P.2d 404 (1979); *see also* 5 K. Tegland, *Evidence* § 213, at 438 (2d

ed. 1980); 2 J. Wigmore, *Evidence* § 578, at 695 (3d ed. 1940). The purpose of the statute is to "prevent invasion of a deceased person's estate, or of the interest of one claiming through a decedent, because the lips of the dead are sealed and cannot rebut testimony unfavorable to their cause." *Fies v. Storey,* 21 Wn. App. 413, 418, 585 P.2d 190 (1978), *overruled on other grounds in Chaplin v. Sanders,* 100 Wn.2d 853, 861 n.2, 676 P.2d 431 (1984).

■ ■ Bell contends that RCW 5.60.030 barred the admission of Mr. Earnheart's testimony regarding Mr. Carlson's statements and actions because Mr. Earnheart is a "party to the record" and a "party in interest." Although RCW 5.60.030 provides "a party in interest or to the record, shall not be admitted to testify", a party to the record may testify if he lacks an interest in the outcome, that is, if he does not testify "in his own behalf." *Showalter v. Spangle,* 93 Wash. 326, 330, 160 P. 1042 (1916). Thus, Mr. Earnheart's status as a party plaintiff does not automatically prevent him from testifying under RCW 5.60.030 if he is not also a "party in interest." A person is a "party in interest" if he would "gain or lose by the direct legal operation and effect of the judgment." *State v. Robbins,* 35 Wn.2d 389, 395, 213 P.2d 310 (1950); *accord, O'Steen v. Estate of Wineberg,* 30 Wn. App. 923, 935–36, 640 P.2d 28 (1982). The interest that will disqualify a witness from testifying must be direct and certain at the time of trial:

> The mere contingency that one might be subjected to an independent claim or suit, depending upon the outcome of the action in which he is called as a witness, is not a disqualifying interest within the purview of RCW 5.60-.030.

*Adams Marine Serv. v. Fishel,* 42 Wn.2d 555, 562–63, 257 P.2d 203 (1953).

In the case sub judice, Bell claims that Mr. Earnheart stood to lose from a judgment quieting title in Bell because the Olsens may have a claim against the Earnhearts for misrepresentation concerning the eastern boundary line of the property. Bell's argument is completely unsupported by

the evidence. At trial, Mrs. Olsen testified that Mr. Earnheart never represented to the Olsens that they would receive clear title to Parcel A free of any claims by Bell. Indeed, it is undisputed that the Earnhearts quitclaimed their interest, if any, in Parcel A to the Olsens, guaranteeing the Olsens nothing. We conclude that Mr. Earnheart's interest in the outcome of this case was neither direct nor certain, but merely speculative. As such, he was not a "party in interest" and his testimony was not barred under RCW 5.60.030.[1]

## TERMS AND SANCTIONS FOR FRIVOLOUS APPEAL SHOULD NOT BE AWARDED

The Olsens seek sanctions and terms pursuant to RAP 18.9 on grounds that Bell's appeal was frivolous. An appeal is frivolous if, on considering the record as a whole, the appeal presents no debatable issues and is so devoid of merit that there is no reasonable possibility of reversal. *Mahoney v. Shinpoch,* 107 Wn.2d 679, 691, 732 P.2d 510

---

[1] We note that it is also doubtful that Bell qualifies as an "adverse party" based simply on the fact that he derived his title to Parcel A through Carlson. The deadman's statute typically applies in cases where there is a party *representing* the deceased's estate who is adverse to the interested litigant or witness seeking to recover against the estate. *See* Comment, *The Deadman's Statute in Washington,* 15 Gonz. L. Rev. 501, 506 (1980); *see also Marks v. Seattle,* 88 Wash. 61, 70, 152 P. 706 (1915) (deadman's statute inapplicable because neither party sued or defended as executor or administrator of any deceased person's estate or as guardian or conservator of any insane person's estate). In some cases, adverse parties do sue or defend "as deriving right or title by, through or from any deceased person". In these cases, however, the adverse parties are heirs or "successors in interest" to the decedent's estate. *See, e.g., In re Estate of Shaughnessy,* 97 Wn.2d 652, 655–56, 648 P.2d 427 (1982) (successors of decedent's intestate property are adverse parties to the proponent of the will because they derive title from the decedent); *Fies,* 21 Wn. App. at 419–20 (daughter of deceased is an adverse party to sister–in–law who claims title to property by adverse possession).

Although a literal reading of RCW 5.60.030 would make any party who owns an interest in property conveyed by a deceased person an "adverse party," it is doubtful that the Legislature intended this. Bell cites no cases involving application of the deadman's statute where one derives his status as an "adverse party" solely because of a prior conveyance from a person now deceased, and our research has revealed none. Because we hold that the deadman's statute is inapplicable on other grounds, we need not decide whether Bell is an adverse party.

(1987); *Streater v. White,* 26 Wn. App. 430, 434, 613 P.2d 187, *review denied,* 94 Wn.2d 1014 (1980). All doubts are resolved in favor of the appellant. *Mahoney,* 107 Wn.2d at 691. "[A]n appeal that is affirmed simply because the arguments are rejected is not frivolous". *Streater,* 26 Wn. App. at 435.

The deadman's statute is commonly misunderstood, and the Olsens do not argue that its application is so clear that Bell's appeal is devoid of merit. Rather, the Olsens contend that they are entitled to terms and sanctions because Bell failed to adhere to the Rules of Appellate Procedure deadlines for briefing and made allegedly misleading statements regarding the record in his brief. The court commissioner allowed each extension Bell requested, however, and the statements in Bell's brief, if misleading at all, are not so egregious as to justify sanctions. Accordingly, we decline to award the Olsens terms and sanctions against Bell.

Affirmed.

GROSSE and WEBSTER, JJ., concur.