[No. 8966–5–III.   Division Three.   December 14, 1989.]

MARILOU MAUCH, *Individually and as Personal Representative,* ET AL, *Appellants,* v. GARY J. KISSLING, *as Personal Representative, Defendant,* BOY SCOUTS OF AMERICA, ET AL, *Respondents.*

*John A. Moore, Jr., Moore & Hoffman,* and *John Sweet,* for appellants.

*Dennis H. Walters* and *Karr Tuttle Campbell,* for respondents.

SHIELDS, J.—Marilou Mauch, as personal representative of her son's estate and individually with his father, Kenneth LeMaster, sued the estate of William Kissling,[1] the Fort Simcoe Area Council of Boy Scouts and Boy Scouts of America (BSA) alleging theories of vicarious liability and negligence after the accidental death of their son. After considering motions for summary judgment by the Boy Scout organizations, the trial court granted dismissal of both causes of action. Ms. Mauch appeals and we affirm.

Trent LeMaster, then 12, was a member of Yakima Boy Scout Troop 123, sponsored by the Knights of Columbus. His scoutmaster, William Kissling, had been involved for years with scouting activities in the Fort Simcoe Area Council. Trent was working toward his Boy Scout aviation badge and had spent time helping Mr. Kissling restore his airplane, a 1946 Piper J–3 C65. An optional requirement to earn the aviation badge was to take a ride in an airplane. Ms. Mauch stated Trent told her that the Scout who worked the most hours on the plane would be rewarded with an airplane ride from Mr. Kissling.

On July 14, 1985, Trent told his mother that Mr. Kissling had invited him to fly to Camp Fife, a Boy Scout camp located near Goose Prairie, Washington, to deliver supplies. Trent further explained that Mr. Kissling had done this every year; other evidence indicated Mr. Kissling had made low altitude overflights in 1981 and 1982 to drop newspapers and ice cream to the Scouts at the camp.

William E. Bradley was the field sports director at Camp Fife during July 1985. He had been associated with the scouting program for 26 years as a volunteer, assistant

---

[1] A settlement of $90,000 was reached with the Kissling estate and it has been dismissed.

scoutmaster and scouting coordinator. Approximately 2 weeks before the flight, Mr. Kissling drove to Camp Fife to help with the Order of the Arrow induction ceremonies. Mr. Bradley heard him converse about his plane with other leaders who were also pilots and, during the course of the conversation, heard him say it was time to make a "run up" for the boys. Mr. Bradley stated he and the Scouts who camped there before were looking forward to the flyover, during which a goodwill package would be dropped from the plane. Brent Nicolai, the camp director, was purported to be present during that conversation.

At 6 p.m. on July 17, the Scouts were assembled on the campgrounds to retire the colors. A plane approached at treetop level and made several passes over the campgrounds. Mr. Bradley reported he could see the smiling face of Mr. Kissling and his passenger. On the second flyover, a bag of candy was dropped, and on the third approach Mr. Kissling appeared to tip his wings before departing. Immediately thereafter, the Scouts heard the popping noise of broken tree limbs and realized the plane had crashed on the grounds near the camp's infirmary. Mr. Kissling and Trent survived the initial impact, but both died shortly thereafter.

An affidavit filed by Robert L. Jones, an aviation expert, concluded Mr. Kissling operated the plane in a careless and reckless manner in violation of minimum safe altitude regulations. He concluded, given the extremely low altitude of the plane (40 feet), daytime temperature (85 degrees), and the accident site elevation (3,500 feet), Mr. Kissling's plane did not have the engine power to recover from a stall.

Ms. Mauch raised five assignments of error; however, for purposes of this opinion, the issues presented are whether there is a material question of fact (1) on the issue of ostensible/apparent agency; and (2) on the issue of negligence.[2]

---

[2]Certain portions of the affidavits signed by Tom Anderson, executive director of Camp Fife, and James Cowan, assistant scoutmaster of Troop 123, which

■ Summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Hontz v. State,* 105 Wn.2d 302, 311, 714 P.2d 1176 (1986); *Leyendecker v. Cousins,* 53 Wn. App. 769, 772, 770 P.2d 675, *review denied,* 113 Wn.2d 1018 (1989). An affidavit in support of a motion for summary judgment must (1) be made on personal knowledge, (2) set forth facts as would be admissible in evidence, and (3) show affirmatively that the affiant is competent to testify to the matters stated therein. *Grimwood v. University of Puget Sound, Inc.,* 110 Wn.2d 355, 359, 753 P.2d 517 (1988). If there is an issue of credibility, the motion for summary judgment should be denied. *Amend v. Bell,* 89 Wn.2d 124, 129, 570 P.2d 138, 95 A.L.R.3d 225 (1977). An issue of credibility is present if there is contradictory evidence or the movant's evidence is impeached. *Dunlap v. Wayne,* 105 Wn.2d 529, 536, 716 P.2d 842 (1986); *Amend,* at 129 (citing *Balise v. Underwood,* 62 Wn.2d 195, 381 P.2d 966 (1963)). There are contradictory assertions by camp personnel whether they knew Mr. Kissling would make an overflight of the camp to drop supplies in 1985. It is undisputed he had done it at least twice in the past, 1981 and 1982, and the subject was discussed 2 weeks before the accident. For purposes of this review, it is assumed they did know the flight would occur.

---

addressed the organization's relationship and communications with Mr. Kissling, were objected to by Ms. Mauch on the basis of the deadman's statute. The trial court admitted them and Ms. Mauch assigned error to the court's ruling.

Mr. Cowan was a volunteer and Mr. Anderson was an employee of the Fort Simcoe Area Council. Neither one had any pecuniary interest in the outcome of the litigation; thus, their statements were not barred by the deadman's statute. *Earnheart v. Carlson,* 47 Wn. App. 670, 674, 736 P.2d 1106 (1987) (citing *Showalter v. Spangle,* 93 Wash. 326, 330, 160 P. 1042 (1916)); *Deacy v. College Life Ins. Co. of Am.,* 25 Wn. App. 419, 422–23, 607 P.2d 1239 (1980). Ms. Mauch also contends the statute was applicable because of the contribution action pending between the Kissling estate and the Scout organizations. However, this claim was a mere contingency at the time of the present litigation; thus, it was not a disqualifying interest. *Earnheart,* at 674.

OSTENSIBLE/APPARENT AGENCY

Ms. Mauch contends the doctrine of apparent authority has been applied to cases involving negligent injury to a third person, citing *Greene v. Rothschild*, 60 Wn.2d 508, 374 P.2d 566 (1962), *rev'd*, 68 Wn.2d 1, 402 P.2d 356 (1965); *Adamski v. Tacoma Gen. Hosp.*, 20 Wn. App. 98, 579 P.2d 970 (1978); Restatement (Second) of Agency § 267, at 578 (1958); *Pierson v. United States*, 527 F.2d 459 (9th Cir. 1975). The Boy Scouts of America respond that apparent authority does not apply in a tort case, citing *Torres v. Salty Sea Days, Inc.*, 36 Wn. App. 668, 676 P.2d 512, *review denied*, 101 Wn.2d 1008 (1984). That statement in *Torres*, at 673, however, is not supported by authority. Thus, we assume, without deciding, that the doctrine of apparent authority may be used to create a material question of fact with respect to a tort action.

■ A corporation can act only through its agents, and when its agents act within the scope of their authority, their actions are the actions of the corporation itself. *Houser v. Redmond*, 91 Wn.2d 36, 40, 586 P.2d 482 (1978). In addition to actual authority, a principal may be liable because of the apparent or ostensible authority of its agent. Apparent authority can only be inferred from the acts of the principal and not from the acts of the agent. *Lamb v. General Assocs., Inc.*, 60 Wn.2d 623, 374 P.2d 677 (1962). *See also Pierson*, at 462. However, there must be evidence the principal had knowledge of the act which was being committed by its agent. *Taylor v. Smith*, 13 Wn. App. 171, 177, 534 P.2d 39 (1975) (citing *Larson v. Bear*, 38 Wn.2d 485, 490, 230 P.2d 610 (1951)). Ordinarily, the question of apparent authority is a factual determination to be made by the trier of fact, unless there is no evidence presented to create that question of fact. *Barnes v. Treece*, 15 Wn. App. 437, 443, 549 P.2d 1152 (1976).

In *Young v. Boy Scouts of Am.*, 9 Cal. App. 2d 760, 51 P.2d 191 (1935), a Scout was injured while riding a bike in the dark without a headlight under the supervision of his scoutmaster. The court noted, at page 765:

It may well be doubted whether such a scoutmaster is the agent and servant of these organizations in the sense involved in those cases which have held a charitable organization liable for the negligence of its servants when proper care in selection has not been exercised. In such cases the servant whose negligence is imputed to the organization has been one employed by it to perform certain duties, although these duties may have been incidentally for the benefit of the beneficiary. Strictly speaking, the boy scouts' organization does not perform acts or carry on a service in the sense in which a hospital or similar institution does. The national organization and the local council furnish a program, train leaders in boys' work and encourage individuals in the various communities to carry on certain work of local benefit, but these organizations do not directly carry out these activities. The local councils assist along these lines but the actual work in the respective communities is performed by local scoutmasters under the direction of local troop committees. A scoutmaster is appointed on the recommendation of this troop committee and not on the recommendation of the local council, and he is responsible solely to this local committee. The troop committee and the scoutmaster are volunteer workers whose services are given to the community rather than to the organization which is, in practical effect, merely an adviser rather than an employer.

*Accord, Davis v. Shelton,* 33 A.D.2d 707, 304 N.Y.S.2d 722 (1969); *McGarr v. Baltimore Area Coun., Boy Scouts of Am., Inc.,* 74 Md. App. 127, 536 A.2d 728 (1988); *Souza v. Narragansett Coun. Boy Scouts of Am.,* 488 A.2d 713 (R.I. 1985).

There is no evidence nor is there a legal basis on which to hold the BSA or the Fort Simcoe Area Council liable for the actions of their scoutmaster, Mr. Kissling, on a theory of ostensible agency. Ms. Mauch has not presented evidence that either BSA or the Fort Simcoe Area Council consented to or had control of Mr. Kissling's actions during the overflight. Nor has she presented evidence she relied on their actions or statements in deciding to allow her son to ride with Mr. Kissling. Rather, the evidence infers the organizations had advised Mr. Kissling he was not to use his plane for Scout activities. Ms. Mauch counters Mr. Kissling had discussed the overflight with camp personnel approximately 2 weeks before the flight. However, there is no evidence the conversation included the fact Mr. Kissling

would have a Boy Scout passenger. Thus, there is no evidence of an act by the principal which would lead a reasonable person to believe its agent was acting with apparent authority. There is no error.

## NEGLIGENCE LIABILITY

Ms. Mauch also contends the BSA and the Fort Simcoe Area Council were negligent in failing to supervise Mr. Kissling, in permitting the campsite to be used as a flyover/air–drop site, in failing to provide reasonable guidelines for scoutmasters, and in failing to monitor tour permit applications.[3] She further alleges a personal relationship existed between Trent LeMaster and the organizations which encouraged Trent to take certain risks, but minimized danger by being prepared. She asserts the organizations, as the landowner, owed a duty to him to use the premises in a reasonable manner so as to prevent a risk of harm to their invitees. Finally, she contends there was malpractice by the camping administrator who failed to prevent the flight even though it had been done in the past.

Negligence encompasses four basic elements: duty, breach, proximate cause, and injury. *Hoffer v. State,* 110 Wn.2d 415, 421, 755 P.2d 781 (1988) (citing *Alger v. Mukilteo,* 107 Wn.2d 541, 545, 730 P.2d 1333 (1987)). Foreseeability is contained within the element of duty: whether the duty imposed by the risk embraces that conduct which resulted in injury. The harm sustained must be reasonably perceived as being within the general field of danger covered by the specific duty owed. *Maltman v. Sauer,* 84 Wn.2d 975, 980–81, 530 P.2d 254 (1975).

Applying the principles of negligence to the facts here, the organizations had no duty or right to control or supervise Mr. Kissling's actions as a private pilot, nor did they have a duty to prevent a Scout from accompanying him

---

[3]Scoutmasters who arranged field trips or camps for their Scouts were required to submit a tour permit to the local council office 2 weeks in advance for proper clearance. The evidence indicated Mr. Kissling submitted his permits with facetious remarks.

when there is no evidence they knew Mr. Kissling would be carrying a Scout passenger. *See Curran v. Marysville,* 53 Wn. App. 358, 365, 766 P.2d 1141, *review denied,* 112 Wn.2d 1020 (1989) (holding that one who cares for a child is not an insurer of the child's safety; they have no duty to foresee and guard against every possible hazard and will not be found to have negligently supervised a child unless he or she had some knowledge that the child was in danger and failed to warn the child or take other adequate precautions).

The failure to supervise the tour permits cannot be the basis of a negligence action because such an omission was not the proximate cause of the accident. *Hartley v. State,* 103 Wn.2d 768, 698 P.2d 77 (1985) (State's failure to revoke a driver's license not the proximate cause of injury even though the State had arrested driver numerous times for drunk driving and the cause of the accident was drunk driving). The organizations had no duty as a landowner because there is no evidence the condition of the land contributed to the injury. Finally, there was no malpractice by the camp administrator because Ms. Mauch failed to object to the court's decision her expert was not qualified to make the conclusions he did with respect to the administration of a camp. Thus, the court's ruling rejecting that evidence remains unchallenged. There was no error.

The judgment of the trial court is affirmed.

THOMPSON, C.J., and GREEN, J., concur.