Ada USREY, Plaintiff-Appellant,

v.

DR. PEPPER BOTTLING COMPANY,
POPLAR BLUFF, Inc., a corpora-
tion, Defendant-Respondent.

No. 8334

Springfield Court of Appeals.

Missouri.

Dec. 23, 1964.

Dwight Crader, Sikeston, for plaintiff-appellant.

J. Lee Purcell, Hyde, Purcell & Wilhoit, Poplar Bluff, for defendant-respondent.

RUARK, Presiding Justice.

Ada Usrey obtained a jury verdict for $12,500. Thereafter the trial court entered judgment for the defendant Dr. Pepper Bottling Company in accordance with its motion for directed verdict. Mrs. Usrey has appealed. On Sunday, April 1, 1962, Ida Mae Howell was driving an automobile belonging to her husband Charles Howell. She collided with the Usrey automobile and Homer Usrey was killed. The sole question is whether or not, at the time of the collision, Ida Mae Howell was the servant, agent, and employee of Dr. Pepper Bottling Company so that the doctrine of respondeat superior applies.

Dr. Pepper had a bottling plant at Poplar Bluff and a warehouse at Sikeston, which is on Highway 60 approximately east of Poplar Bluff. Charles Howell lived in Poplar Bluff and had been working for Dr. Pepper since the previous November. He described his duties as "truck driver and maintenance." He had no authority to hire or fire. One Crossfield was the principal owner and manager. His wife, Ruby Crossfield, worked in the office. Ida Mae Howell (wife of Charles) did not work at the plant, apparently had never been there, and the Crossfields were not acquainted with her. On Saturday arrangements were made for Howell to take a truck load of beverage on the following day from the plant to the warehouse at Sikeston and leave it for use by the "routeman." Crossfield had made arrangements with Mrs. Crossfield to drive over to Sikeston and bring Howell back after he delivered the truck. While Howell was loading the truck, Crossfield called Mrs. Crossfield and told her to come to the office preparatory to going after Howell at Sikeston in order to return him to Poplar Bluff. Then Howell volunteered the information that his (Howell's) wife, Ida Mae, was going to pick him (Howell) up at Sikeston and take him to New Madrid and (also) to visit his folks. Mrs. Crossfield came to the plant. Then, quoting from Howell's examination:

"Q. Is it true that Mr. Crossfield had made arrangements for Mrs. Crossfield to go over and to bring you back in their own vehicle?

"A. Yes, sir.

"Q. And is it also true that you told Mrs. Crossfield and Mr. Crossfield there in the plant that that wouldn't be necessary, that your wife was going to pick you up and take you on to New Madrid?

"A. Yes, sir, that's what we had planned.

"Q. Then you were going on to New Madrid on a social trip, is that correct?

"A. That's correct.

"Q. And I believe you said you were also going somewhere else?

"A. I was going to see my dad at Hayti.

"Q. Now, this trip that your wife was making on the occasion when the accident occurred, that was at your request and not at the request of the Dr. Pepper Bottling Company in Poplar Bluff, wasn't it?

"A. Yes, sir, it was."

Howell told Crossfield he would have to have some money for gas. About the only place there is any possible difference in the testimony of Howell and Crossfield is in reference to this gas. Howell testified

that "I told him I had to have some money for gas." Later he was asked:

"Q. You told him you had to have gasoline for what?

"A. For the truck and car, too.

"Q. I didn't hear your answer.

"A. For the car and truck, too."

Crossfield testified that gas for the car was not discussed. At any rate Crossfield gave Howell five dollars and Howell put $2.05 worth of gas in the truck and $2.50 worth in his own car; but he (Howell) testified he understood that he was to pay for the gasoline that went into his own car. Later (after the accident) Howell turned in filling station tickets showing these gasoline purchases. He was credited with the $2.05 gas which went in the truck and his wages were charged with the balance of the five dollars.

Ida Mae Howell was not at the plant that morning. Crossfield testified "I knew that he told me she would pick him up in Sikeston but I didn't know she was going to follow him." Howell's "time" ended when he left the truck at the warehouse. Actually he and his wife planned to go witness a mock battle at New Madrid (which is south of Sikeston on Highway 61), and then go visit Mr. Howell's father who lived at Hayti, which is still farther south on Highway 61. They were making a family outing of the trip and Mrs. Howell had some of the children in the car. Also, it would appear Howell had two of their children in the truck with him, but there is no evidence that Crossfield knew of this. He testified it was against company rules for the drivers to have riders in the cab with them.

The collision occurred at Dexter, between Poplar Bluff and Sikeston. Instead of going around Dexter on the highway, Howell went in on what might be called the "business" route in order to buy some bologna and sandwiches. At this time Mrs. Howell, in the family car, was following the truck,

and while so engaged she collided with the Usrey car. There is no contention that Howell was negligent in the operation of the company truck. Nor is there any evidence that Howell was directing the operation of the family car. Plaintiff's case was based entirely on the negligence of Ida Mae Howell in the operation of the car.

■ Appellant contends she made a submissible case of liability based on respondeat superior because Ruby Crossfield testified that Dr. Pepper Bottling Company "made arrangements" with Ida Mae Howell to return Howell to Poplar Bluff. The testimony referred to is as follows:

"Q. Did the Dr. Pepper Bottling Company or anyone on their behalf make arrangements for Ida Mae Howell (sic) to go to Dexter (sic) for the purpose of returning Charles Howell to Poplar Bluff? A. Did we make any?

"Q. Yes. Did the Dr. Pepper Bottling Company? A. Yes.

"Q. When was that made?

"A. Well, I was home, and my husband called me and told me to come down to the office, he wanted me to go over to Sikeston and pick Charles up.

"Q. Did you go to the Poplar Bluff Bottling Company plant thereafter? A. Yes."

Later she said she didn't understand the question and her whole testimony indicates that the only knowledge she had concerning the transaction was that her husband asked *her*, not Mrs. Howell, to make the trip, that she went to the plant prepared to go, and Howell said that his wife was going to pick him up. It is true, as appellant asserts, that we must give the verdict holder the benefit of all favorable evidence and inferences; but we think this does not require us to place an interpretation on a statement which the witness said she did

not intend and which is completely out of harmony not only with the whole testimony of the witness but also with *all* the other evidence in the case. Both plaintiff's and defendant's evidence show that Howell made the arrangement with his wife. There is no evidence that anyone representing Dr. Pepper Bottling Company (unless Howell be taken as a representative) had any contact whatsoever with Mrs. Howell. The whole *sense* of Mrs. Crossfield's testimony is contrary to the meaning which appellant seeks to apply. However, the whole testimony further shows that Crossfield, representing the defendant, *acquiesced* in the arrangement (by Howell) for Mrs. Howell to pick up Howell at Sikeston. The question is, was that an acquiescence or consent, either express or implied, to her performing a service *for the defendant.*

Appellant contends the evidence showed that defendant furnished money to buy gasoline for the truck *and* the car. This involves the proposition that the jury could accept the testimony of Howell, and to some extent of Crossfield, that defendant furnished the money for the gas in the car and disregard and refuse to believe the testimony of the same two witnesses that it was an advance for the personal account of Howell. This is contrary to the whole sense of the testimony of both witnesses, but for the purpose of this appeal we will assume, although it is a rather labored assumption, that defendant furnished the gas for the car.

■ Did the relationship of master and servant apply as between Ida Mae Howell and the defendant Dr. Pepper? Was she, in going to Sikeston to "pick up" her husband, engaged in the service of Dr. Pepper Bottling Company? If not, Dr. Pepper would not be responsible for independent acts of a third person not in its service. It is elemental that the person sought to be charged as master is liable only when the relationship of master and servant exists in respect to the very transaction out of which the injury arose. Oganaso v. Mellow, 356 Mo. 228, 201 S.W. 2d 365, and cases cited at loc. cit. 365. We agree that a master can be liable for the acts of a servant or sub-servant appointed expressly or by implication, acquiescence, and ratification, this depending upon the circumstances involved.[1] Also we agree that the fact the person sought to be classified as servant uses his own automobile with knowledge of the person sought to be charged as master is not *necessarily* controlling in the application of the doctrine of respondeat superior.[2] We also assume, without finding it necessary to decide, that Charles Howell was engaged on a "special errand" as the servant of the defendant, so that the ordinary "going and coming" rule, if otherwise applicable, might not apply;[3] and that defendant owed Howell a duty to provide a means for return, if he so chose, from Sikeston to Poplar Bluff, and therefore it was the employer's business to provide for such return. The question is, was *this* trip of Ida Mae Howell in furtherance or promotion of the business of Dr. Pepper. Wolf v. Terminal R. Ass'n of St. Louis, 282 Mo. 559, 222 S.W. 114. In this connection, it is not sufficient to impose liability on Dr. Pepper that the use of the vehicle driven by Ida Mae Howell may have incidentally benefited or remotely promoted the business of the defendant. 8 Am

1. 57 C.J.S. Master and Servant, § 563 d, p. 279; Restatement, Agency 2d, § 5, p. 21; Fuqua v. Lumbermen's Supply Co., 229 Mo.App. 210, 76 S.W.2d 715, 719; Weatherman v. Handy, Mo. App., 198 S.W. 459, 460.

2. Riggs v. Higgins, 341 Mo. 1, 106 S.W.2d 1, 5; Schmitt v. American Press, Mo. App., 42 S.W.2d 969, 972; see Chiles v. Metropolitan Life Ins. Co., 230 Mo.App.

350, 91 S.W.2d 164, 169; also, McCaughen v. Mo. Pac. R. Co., Mo.App., 274 S.W. 97.

3. See 5 Blashfield, Automobile Law, Perm. Ed., § 3041; Church v. Ingersoll (10th Cir.) 234 F.2d 176; 8 Am.Jur.2nd, Automobiles and Highway Traffic, § 637, p. 195; 52 A.L.R.2d Anno., p. 311; Beckwith v. Standard Oil Co., Mo., 281 S.W. 2d 852.

Jur.2d, Automobile and Highway Traffic, § 635, p. 194; 52 A.L.R.2d, Anno. § 16, p. 339; Wines v. Goodyear Tire & Rubber Co., Mo.App., 246 S.W.2d 525(6); Sowers v. Howard, 346 Mo. 10, 139 S.W.2d 897; Oganaso v. Mellow, supra, 356 Mo. 228, 201 S.W.2d 365; Klotsch v. P. F. Collier & Son Corp., 349 Mo. 40, 159 S.W.2d 589. Attention must be paid to the "inducing factor," or "the object of the trip," the "purpose." Even the motive and the intent of the parties is in many instances a determining factor. 5 Blashfield, Automobile Law, Perm.Ed., §§ 3007, 3008; Smith v. Fine, 351 Mo. 1179, 175 S.W.2d 761, 767. Mullally v. Langenberg Bros. Grain Co., 339 Mo. 582, 98 S.W.2d 645, 649; Dilallo v. Lynch, 340 Mo. 82, 101 S.W.2d 7, 13; see Sowers v. Howard, supra, 346 Mo. 10, 139 S.W.2d 897, 901; also, Montana v. Nenert, Mo.App., 226 S.W.2d 394, 398, 400. In Klotsch v. P. F. Collier & Son Corp., supra, 349 Mo. 40, 159 S.W.2d 589, at loc. cit. 593, the court requoted from Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, 183, as follows:

" * * * 'If the journey would have gone forward though the business errand had been dropped, and would have been cancelled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk.' "

As applied to our situation, defendant had arranged transportation of Howell back to Poplar Bluff. But *that arrangement was rejected.* Howell chose instead to make a family and social outing of the occasion. He, with his family, planned to go to New Madrid and then down the highway to Hayti for a family visit as soon as Howell's "time was ended" when he reached Sikeston. He *could* have chosen to accept defendant's proffer of return trans-

portation. Instead he chose to use the rest of the day after his "time had ended" for a personal venture. He did not plan to return to Poplar Bluff, the means for which defendant had offered to provide. Ida Mae was not driving to Sikeston to bring Howell back to work or to return from work. She was driving there for the purpose of accomplishing a personal end entirely unrelated to the business of the employer— i.e., that of driving with her husband and family to New Madrid and Hayti. It would appear therefore that she was driving toward Sikeston not for the purpose or object of accomplishing any service to defendant, but for a purpose which was to be accomplished when the Dr. Pepper truck was left at the warehouse and her husband's "time was done." The fact that she happened to be *following* the truck is only coincidental. It was not *necessary* that she follow it at the time of the collision nor at any other time insofar as Dr. Pepper's business was concerned.

 The test almost universally applied in determining whether or not respondeat superior applies to torts is, did the person sought to be charged as master have *the right or power to control* and direct the physical conduct of the other in the performance of the act. If there was no right to control there is no liability;[4] for those rendering service but retaining control over their own movements are not servants. Skidmore v. Haggard, 341 Mo. 837, 110 S.W.2d 726; Reiling v. Missouri Insurance Co., 236 Mo.App. 164, 153 S.W.2d 79, 83. And the relationship (of servant and master) begins only when the person charged as master has the right to direct the method by which the master's service is performed. Restatement, Agency 2d § 233. We cannot find anything indicating that the defendant had any right of control

---

4. 56 C.J.S. Master and Servant, § 2, p. 33 et seq.; 35 Am.Jur. Master and Servant, § 3, p. 445; Sherwood v. Arndt, Mo., 332 S.W.2d 891; Stokes v. Four-States Broadcasters, Mo., 300 S.W.2d 426; Rubinelli v. Union Elec. Light & Power Co., Mo.App., 187 S.W.2d 762; Talley v. Bowen Construction Co., Mo., 340 S.W. 2d 701, 704; Douglas v. National Life & Accident Co., Mo.App., 155 S.W.2d 267, 271.

whatsoever over Ida Mae Howell or her automobile. Had she chosen to go by a roundabout route, or had she chosen to stop at a sale or to have a picnic with her children, and had defendant objected, she, quite properly, could have said, *"It's none of your business."* Had she changed her mind after leaving Poplar Bluff and decided that she did not wish to continue on the trip, defendant would have been powerless to order her to do otherwise. , Had word come to defendant that she was proceeding recklessly and was endangering others on the highway, defendant could not have directed her to cease driving or to return to Poplar Bluff—this because she was not answerable to Dr. Pepper for her movements. We conclude that defendant had no right or power of control over the conduct of Ida Mae Howell when she drove toward Sikeston and at the time of the collision. . For reasons aforesaid, the judgment is affirmed.

STONE and HOGAN, JJ., concur.