**Mark D. WILSON and Janet L. Wilson, Plaintiffs–Appellants,**

v.

**ST. LOUIS AREA COUNCIL, BOY SCOUTS OF AMERICA, et al., Defendants–Respondents.**

No. 61322.

Missouri Court of Appeals, Eastern District, Division Two.

Nov. 10, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 7, 1993.

Application to Transfer Denied Feb. 23, 1993.

---

Alan E. DeWoskin, St. Louis, for plaintiffs-appellants.

Russell F. Watters, Robert W. Cockerham, T. Michael Ward, Brown & James, P.C., St. Louis, for defendants-respondents.

CRANDALL, Presiding Judge.

Plaintiffs, Mark D. Wilson and Janet L. Wilson, appeal from the trial court's grant of summary judgment in favor of defendant, The St. Louis Area Council, Boy Scouts of America, in an action arising out of the fatal electrocution of their son. We affirm.

Plaintiffs' son, Anthony Wilson (Tony), was a member of Troop 392 of the Boy Scouts of America (troop) and of the St. Louis Area Council (Council). On September 23, 1988, Tony was on a trip with the troop to Fort Leonard Wood, Missouri. Five adult volunteer leaders (leaders) accompanied the troop. The troop stayed in a building which had aluminum pipes stacked next to it. The pipes were approximately 30 feet in length. The leaders were not aware of the presence of the pipes.

At approximately 10:00 p.m., Tony, aged 13, and five or six other scouts, aged 12 to 16, were outside the building. The leaders were inside the building. Tony and two other scouts picked up a pipe and raised it so that it came into contact with 7200-volt power lines which ran over the building. All three scouts were electrocuted; Tony died as a result of the injuries he sustained.

Plaintiffs brought an action for the wrongful death of Tony against Council. Council filed a motion for summary judgment, attaching the affidavit of Robert Meinholtz, Council's Executive and Secretary, to its motion. *See* Rule 74.04(a). The affidavit stated that Council was a benevolent corporation, organized and existing under the laws of Missouri. The Boy Scouts of America (BSA) chartered local councils, each of which served a specific geographic area. Local sponsors, such as schools, churches, or civic organizations, applied for charters from BSA through their local councils. Local councils did not administer the scouting program for the sponsor, did not select volunteers, did not prescribe training for volunteers, and did not direct or control the activities of troops. Troops were not required to get permission from local councils before participating in an activity.

Plaintiffs first contend that there was a genuine issue of material fact as to whether or not the leaders were the agents or servants of Council, such that Council was vicariously liable for their negligence.

■ Under the doctrine of respondeat superior an employer is liable for those negligent acts or omissions of his employee which are committed within the scope of his employment. *Light v. Lang*, 539 S.W.2d 795, 799 (Mo.App.1976). Liability based on respondeat superior requires some evidence that a master-servant relationship existed between the parties. *Usrey v. Dr. Pepper Bottling Co., Poplar Bluff*, 385 S.W.2d 335, 337 (Mo.App.1964). The test to determine if respondeat superior applies to a tort is whether the person sought to be charged as master had the right or power to control and direct the physical conduct of the other in the performance of the act. *Id.* If there was no right to control there is no liability; for those rendering services but retaining control over their own movements are not servants. *Id.* The relationship of servant and master begins only when the person

charged as master has the right to direct the method by which the master's service is performed. *Id.* Whether a party is liable under the doctrine of respondeat superior depends on the facts and circumstances in evidence in each particular case and no single test is conclusive of the issue of the party's interest in the activity and his right of control. *Sharp v. W. & W. Trucking Co.*, 421 S.W.2d 213, 220 (Mo. banc 1967).

█ In addition, with regard to the unpaid volunteer, the volunteer may be a servant of the one accepting his services. Allan Manley, Annotation, *Liability of Charitable Organization Under Respondeat Superior Doctrine for Tort of Unpaid Volunteer*, 82 A.L.R.3d 1213, 1216 (1978). Central in determining liability in the volunteer situation is control, or the right of the charitable organization to control, the activities of the volunteer. *Id.*

█ In the instant action, the organizational structure of BSA, as described in Meinholtz's affidavit, established the autonomy of the troop and its leaders with regard to troop activities. Generally, Council sanctioned a troop's participation in programs at military installations and provided the requisite reservation forms to the leaders. With regard to the troop's trip to Fort Leonard Wood, however, Council did not grant permission to the troop to attend that activity. Council did not direct, or have knowledge of, the troop's participation in the activity. The leaders alone made the decision to take part in the program at Fort Leonard Wood and were in charge of the troop members while they were engaged in that activity. There was no evidence that Council either controlled or had the right to control the leaders' activities on the trip to Fort Leonard Wood. The leaders, therefore, were not the servants or agents of Council while participating in the program at Fort Leonard Wood.

Plaintiffs maintain that Council's written accident reports indicate Council's awareness of the troop's trip to Fort Leonard Wood. The facts do not support this argument. Council compiled the accident reports subsequent to the occurrence of the accident. The reports therefore cannot be used to establish Council's advance knowledge of, or consent to, the troop's participation in the activity.

Plaintiffs also argue that Council was liable for the leaders' actions on the basis of apparent agency. Plaintiffs contend that apparent agency can be inferred from a myriad of factors; for example, Council's carrying liability insurance on the leaders, the leaders' promoting the purposes of scouting, the wearing of uniforms, the scouts' working for common merit badges, and Council's issuing membership cards. In addition, plaintiff-father's affidavit stated that he relied upon the manifestation that BSA and Council comprised one single organization and that the troop leaders represented and acted on behalf of BSA and Council.

█ Apparent authority results from a manifestation to a third person by the supposed principal that another is his agent. *Clark County Sales Co., Inc. v. Hester*, 732 S.W.2d 569, 571 (Mo.App.1987). Apparent authority arises from the acts of the alleged principal and not from the acts of the agent; an agent cannot create his own authority. *Id.*

█ There is no evidence which would support holding Council liable for the actions of the leaders on the theory of apparent authority. Plaintiffs presented no evidence that Council overtly manifested in any way that it controlled or consented to the leaders' actions. The Boy Scout Handbook states, "What the troop does is planned by the patrol leaders' council.... [which] is made up of the patrol leaders, the senior patrol leader, and the Scoutmaster." Plaintiff-father's mere assertions of his reliance that BSA and Council constituted one organization, with the leaders as its representatives, was not sufficient to create apparent agency, in the absence of representations by Council which would give rise to such reliance on his part.

In addition, other jurisdictions have addressed the issue of whether the local council can be held liable for the negligent acts of its volunteers and have found no liability on the part of the local council. In *Mauch*

*v. Kissling,* 56 Wash.App. 312, 783 P.2d 601 (1989), the parents of a scout brought an action against the local council and BSA for the death of their son who was killed, along with the scoutmaster, when the scoutmaster's light plane crashed while flying over a scout camp. *Id.* 783 P.2d at 603. The court upheld the grant of summary judgment in favor of BSA and the local council. The court concluded that the scouting organizations could not be held liable on the basis of apparent authority because the scout's parents presented no evidence that the scouting organizations consented to or had control of the scoutmaster's activities. *Id.* at 605. The court also rejected parents' negligence theory, holding that the scouting organizations had no duty or right to control or supervise the scoutmaster's actions as a private pilot and had no duty to prevent the scout from accompanying him, in the absence of evidence that the organizations knew that the scoutmaster would be carrying a scout passenger. *Id.* at 606.

In *McGarr v. Baltimore Area Council, Boy Scouts of America, Inc.,* 74 Md.App. 127, 536 A.2d 728 (1988), a scout's mother brought an action against the scoutmaster and the area council for injuries which her unsupervised son sustained when he fell over a cliff on property owned by Council. *Id.* 536 A.2d at 729. The court found that the local council was not vicariously liable for the acts of the scoutmaster because the scoutmaster was not acting as council's agent. *Id.* at 735. The court described the relationship between the local council and the scoutmaster as follows:

> [Council] is an umbrella organization; it charters individual troops and ... tries to assure itself that the troop will have responsible adult leadership. But it does not choose or in any way directly supervise the scoutmaster, who is selected by the troop. In these circumstances, it is generally held that the council is not vicariously liable for the negligence of the scoutmaster.

*Id.* (citations omitted); *see also Souza v. Narragansett Council, Boy Scouts of America,* 488 A.2d 713 (R.I.1985) (presence of local council's employees at unautho-

rized boxing program did not render council liable for injury which scout sustained in boxing match, where evidence was that matches were not a program offered by local council but were organized by the individual scoutmaster and that council's employees did not have the authority to stop the matches); *Davis v. Shelton,* 33 A.D.2d 707, 304 N.Y.S.2d 722 (1969) (local council not liable for injuries that unsupervised scout sustained when he fell out of tree, because council exercised no supervision or control over the activities of the troop).

But, when the scoutmaster's alleged negligence occurred at a function directly sponsored and supervised by the local council, the council was found to be liable. *Riker v. Boy Scouts of America, Saratoga County Council, Inc.,* 8 A.D.2d 565, 183 N.Y.S.2d 484 (1959). In *Riker,* the court found agency, and thus liability, on the part of council for the negligence of a volunteer scoutmaster who had hung a flag at a Scout-O-Rama, a fair sponsored and run by the area council. *Id.* 183 N.Y.S.2d at 486. The flag fell and injured a spectator. *Id.* at 485. The court rejected local council's argument that the scoutmaster acted solely on behalf of his troop and held council liable on the basis that it directed and controlled the volunteer's duties and behavior at the Scout-O-Rama. *Id.* at 486.

In the instant action, Council neither controlled the actions of the troop leaders nor ran the program at Fort Leonard Wood. There was no vicarious liability on the part of Council for the leaders' actions while on the trip to Fort Leonard Wood. The trial court did not err in granting Council's motion for summary judgment. Plaintiffs' first point is denied.

In their second point, plaintiffs contend that there was a genuine issue of material fact as to whether Council either failed to train, or improperly trained, or both, the leaders, so as to prevent foreseeable dangers to members of the troop on the trip to Fort Leonard Wood. Plaintiffs argue that Council was responsible for the training of adult leaders; and question the training of the leaders specifically with regard to the

supervision of minors, the dangers of electricity, and the inspection of buildings.

Actionable negligence arises from (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury, (2) the failure of the defendant to perform that duty, and (3) injury to the plaintiff resulting from such failure. *McKim v. Sears Rodeo Ass'n, Inc.*, 789 S.W.2d 217, 220 (Mo.App.1990). The duty imposed by the law of negligence arises out of the surrounding circumstances and is based on the foreseeability or a reasonable anticipation that harm or injury is a likely result of the defendant's acts or omissions. *Id.* That is, negligence exists in a particular situation only if a reasonably prudent person would have anticipated the danger and provided against it. *Id.*

Here, Council owed no duty to train the leaders to protect Tony from harm, where Council had no control over the troop's activities during the weekend at Fort Leonard Wood. *See Mauch*, 783 P.2d at 606; *see also Conroy v. City of Ballwin*, 723 S.W.2d 476, 478 (Mo.App.1986) (city had no duty to supervise or train police officers in safe method of off-duty target shooting to avoid injury to third person, because officer's use of firearms was outside scope of employment). The record does not establish that Council, acting in a reasonably prudent manner, could have anticipated the danger of electrocution to Tony and provided against it. *See McKim*, 789 S.W.2d at 220. Council did not require any training or instruction as a prerequisite to becoming a leader. Council did not choose, train, or test the troop leaders. Although the Boy Scout Handbook stated that "[t]raining is an important council task," it went on to say that council would "make arrangements" for the training of volunteers. It made no assurances either that such training would in fact occur or that any training was mandatory to certify a volunteer as a scout leader. *Compare Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc.*, 700 S.W.2d 426, 432–333 (Mo. banc 1985) (duty of manufacturer of an automatic milking system to use reasonable care in training and supervising personnel of seller of the milking system arose as a result of assurances to purchaser of the milking system at the time of entering into the sales contract that training and supervision in the proper installation of the system would occur). Rather, the troop was an autonomous unit which conducted and controlled its own activities and which monitored its own leaders. Because the relationship between Council and the leaders did not give rise to a duty to train the leaders, Council was then not required to exercise reasonable care in rendering such training. Under these circumstances, Council had no duty to protect Tony from injury. The record does not support plaintiffs' claim of negligence. The trial court did not err in granting summary judgment on that basis.

Plaintiffs propose that Council's final written accident report supports its argument that there was an issue of fact with regard to Council's duty to train the leaders. They focus on the following statement contained in that report: "Reemphasis at Roundtables and leader training of leaders [sic] responsibilities on safe and secure facilities used and necessity for closer supervision." We do not agree. The statement in the report was clearly characterized as a recommendation. The report did not make training to prevent a similar occurrence mandatory, but merely emphasized that safety measures should be discussed at the training sessions which Council offered and which leaders could voluntarily attend. Plaintiffs' second point is denied.

In their final point, plaintiffs assert that the trial court erred in denying plaintiffs' motion to strike Meinholtz's affidavit because it did not comply with Rule 74.04(e), in that it was not based on personal knowledge and contained conclusions of law and untruths. The record does not support plaintiffs' contention. Meinholtz's role as Council's Executive and Secretary established his familiarity with the organization and structure of BSA, as well as with the interrelationship between BSA, the local councils, and the individual troops. He therefore had personal knowledge of

the facts in his affidavit. Furthermore, the affidavits submitted by plaintiffs did not directly contradict the facts in Meinholtz's affidavits, but rather set forth the affiants' subjective beliefs about the organization of the scouting program. Plaintiffs' affidavits therefore did not impeach the truthfulness of Meinholtz's affidavit. The trial court did not err in refusing to strike Meinholtz's affidavit. Point three is denied.

The judgment of the trial court is affirmed.[1]

KAROHL, C.J., and GRIMM, J., concur.

---

**1.** *See Wilson v. Boy Scouts of America,* 784 F.Supp. 1422 (E.D.Mo.1991) where a federal district court granted summary judgment in favor of BSA because BSA did not control local council's volunteers and had no duty to control, supervise, or train those volunteers.