806 F.Supp. 845 (1992)
M.L., et al., Plaintiffs,
v.
CIVIL AIR PATROL, et al., Defendants.
No. 91-2524-C (5).
United States District Court, E.D. Missouri, E.D.
November 20, 1992.
Mary E. Coffey, John J. Frank Partnership, St. Louis, Mo., for plaintiffs.
Brian R. Plegge, Partner, Moser and Marsalek, Russell F. Watters, Brown and James, St. Louis, Mo., Robert W. Cockerham, Ballwin, Mo., for defendants.

MEMORANDUM
LIMBAUGH, District Judge.
This matter is before the Court upon defendant Boy Scouts of America, Inc.'s Motion for Summary Judgment. The present action was filed by plaintiffs against the Civil Air Patrol (hereinafter "CAP") and the Boy Scouts of America, Inc. (hereinafter "BSA") for incidents involving defendant Albert Edward Newman, an adult volunteer of a dually chartered CAP/BSA post. Mr. Newman was convicted of sexually molesting plaintiff M.L. on or about January 10, 1989 and several times thereafter. Plaintiffs have brought suit against BSA under two theories of liability, respondeat superior and negligent hiring and retention.

*846 I. Standard for Summary Judgment

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.

II. Facts
The Boy Scouts of America, Inc. is a congressionally chartered not-for-profit corporation, with its principal business in Irving, Texas. The purpose of the organization, as evidenced by the charter, is to "promote the organization in cooperation with other agencies, the ability of boys to do things for themselves and others, to train them in scout craft, and to teach them patriotism, courage, self-reliance, and kindred virtues." To carry out the aforementioned purpose, BSA issues charters to schools, churches or civic organizations. This charter authorizes the organization to sponsor a local "unit" of boy scouts, cub packs, or explorers. BSA has no stockholders and pays no dividends. By congressional mandate, BSA is governed by a National Council, which selects a National Executive Board, both of which are comprised solely of volunteers. The National Executive Board selects a paid executive who employs a national staff known as "professional scouters." These professional scouters and their paid support staff are the only employees of BSA. The local chartered organization, in this case, the St. Charles Company Squadron 2304 Civil Air Patrol, USAF, (hereinafter "the Squadron") owns and operates its own explorer post and uses the program to the extent it chooses. The local chartered organization selects its own volunteers to administer the program. The local chartered organization can also discharge the volunteers for misconduct without any prior approval by BSA.
The Civil Air Patrol was congressionally enacted in July, 1946 and its purpose, powers and membership qualifications are described at 36 U.S.C. § 201, et seq. It is also an auxiliary of the United States Air Force under 10 U.S.C. § 9441. BSA was congressionally enacted in June, 1916, its purpose and organization are described separately at 36 U.S.C. § 21, et seq. CAP has its own *847 national headquarters at Maxwell Air Force Base near Montgomery, Alabama. Its organization has its own membership, age requirements, structure, employees, board of directors, programs and administrators separate and unrelated to that of BSA. In 1982, the national headquarters of these two organizations decided that a partnership between CAP and the BSA's Air Explorers would be desirable. The Air Explorer post adopted the programs and regulations of CAP in their entirety as a jointly chartered unit and equal partner with CAP. CAP is also subject to the provisions of the Charter, Bylaws, Rules and Regulations of the Boy Scouts of America.
Before the local organization applies for a charter, it forms a local troop committee that is responsible for promoting the troop and recruiting young men to participate in the program. The committee generally, and in this case, consists of parents and members of the local organization, here known as the Squadron. In this case, Albert Newman was a member of the Squadron. The local volunteer adults register with BSA by completing a volunteer adult leader form which is forwarded to the National Headquarters of BSA. When BSA receives a volunteer adult leader form the name is checked against the names of individuals contained in BSA's ineligible volunteer files. If an individual's registration has been terminated for any reason by BSA, or is "unfit," that individual will be listed as non-eligible. If the individual later applies for registration as a volunteer for scouting for a local organization chartered by BSA, the local unit will be notified of the individual's "unfit" status.
The local chartering organization decides what investigation into the background and character of the prospective volunteer scout leader is appropriate. In this case, CAP had a policy of screening individual volunteers through the Federal Bureau of Investigation. In the present case, the Squadron selected and retained Newman to serve as a committee member for the post. The decision to accept and/or remove Newman from the Squadron was in the discretion of the Commander of that Squadron. No improprieties concerning Newman had even been reported to BSA prior to the occurrence of the alleged incidents.
Plaintiff M.L. was recruited to join the Squadron in December, 1988 when he was twelve years old. M.L. did not actually join the BSA or the explorers post chartered by BSA at the time of any of the alleged incidents. An explorer must be at least fourteen years of age. Newman recruited M.L. as a guest. Newman was very active in the Squadron, especially with the cadets. He was the Squadron's recruiting officer, public affairs officer, and in charge of the Squadron color guard. He also took care of all of the Explorers activities of the post. He was the head recruiter for the Explorers in the post.
Newman was also a convicted felon. In March, 1987 he had been convicted in the State of Michigan for molesting three boys at a church youth camp. He was on probation for those offenses when he became a BSA volunteer. One of the conditions of his probation was that he would have no unsupervised contact with children. BSA had no knowledge of Newman's past convictions or that he was in any manner "unfit."
On January 10, 1989, when M.L. had been participating in the Squadron for about a month, Newman told M.L. he was taking a group of cadets to the track at St. Charles West High School so that they could run the mile the cadets needed to advance in the CAP program. The mile requirement was a CAP, not a BSA, requirement. When M.L. got to the track, there were no other cadets present. M.L. ran the mile, then at Newman's invitation, went to Newman's trailer nearby for a soda. While they were there, Newman requested that M.L. disrobe to try on a CAP uniform. During this incident, Newman allegedly molested M.L. M.L. screamed and fought Newman, eventually stopping Newman. On the ride home, Newman told M.L., "If you tell anyone what happened today, I'll blow up your house because I have people that have dynamite."
*848 M.L. did not tell anyone for several months. During those months he tried to avoid Newman, but could not avoid him entirely because of Newman's active involvement in the Squadron. In February, 1989, at an explorer YMCA lock-in, Newman allegedly exposed himself to M.L. in the locker room. In May, 1989, at a SWIFT function, M.L. allegedly saw Newman standing with a camera in the woods looking through M.L.'s tent window while M.L. was changing clothes. All three of the activities at which M.L. and Newman were present were neither directly sponsored nor approved in any way by BSA.
In November, 1989, Newman asked M.L. to go see a Christian comedian with a group of cadets and adult members of the post. M.L. discussed the invitation with another cadet. In the course of the conversation, it came out that both boys had been sexually abused by Newman. When M.L.'s mother encouraged him to go with Newman to see the comedian, M.L. refused and told his mother that Newman had touched him inappropriately. M.L. talked briefly with his father that night about Newman and then in more detail with his school counselor Mr. Kielty later in the week. Mr. Kielty called the police and Newman was arrested and eventually found guilty of molesting M.L. and four other cadets. M.L. testified at Newman's trial and he was convicted. Newman is now serving a fifty-four year sentence for molesting M.L. and the other cadets.

III. Analysis
Defendant BSA moves for summary judgment in the present action, arguing that defendant Newman is not an employee, servant or agent of BSA and, therefore, BSA is entitled to summary judgment as a matter of law on plaintiffs' claims of respondeat superior and negligent hiring and retention. As to plaintiffs' respondeat superior claim, defendants direct the Court's attention to Wilson v. Boy Scouts of America, 784 F.Supp. 1422 (E.D.Mo.1991) and to Wilson v. St. Louis Area Council, Boy Scouts of America, 845 S.W.2d 568 (Mo.Ct.App.1992). Both of these cases arise from the same set of facts. In those cases, plaintiffs brought suit against BSA and against the local BSA council alleging negligence of the local adult scout leaders arising out of the fatal electrocution of a BSA member. The trial courts in both cases granted summary judgment in favor of BSA and/or the local council as to the issue of respondeat superior. In Wilson v. Boy Scouts of America, 784 F.Supp. at 1425, the Court quoted McGarr v. Baltimore Area Council, Boy Scouts, Inc., 74 Md.App. 127, 536 A.2d 728 (1988), in which the Maryland Court stated:
BAC (Baltimore Area Council) is an umbrella organization, it charters individual troops and, as part of that annual process of initial chartering and charter renewal, tries to assure itself that the troop will have responsible adult leadership. But it does not choose or in any way directly supervise the scoutmaster, who is selected by the troop. In these circumstances, it is generally held that the council is not vicariously liable for the negligence of the scoutmaster. (citations omitted).
This Court then went on to state that the "national organization similarly does not choose or directly supervise the scoutmaster or other volunteers at the troop level." Wilson, 784 F.Supp. at 1425. "If anything, the relationship is even more remote." Id. "The organizational structure of BSA keeps control of specific activities at the level closest to the actual troop." Id. In both the Missouri and Federal Wilson cases, there was no evidence presented that BSA or even the local council manifested control over the troop leaders' activities. In the present action, just as in Wilson, plaintiffs have presented no evidence to indicate that BSA manifested the necessary control over defendant Newman's activities or conduct to support a theory of recovery for respondeat superior. BSA does not and cannot select, retain or hire the troop committee members for the local troop units. Thus, it is the opinion of this Court that defendant BSA's motion for summary judgment as to plaintiffs' claim for respondeat superior should be granted because there is no genuine issue of material fact and defendant *849 BSA is entitled to judgment as a matter of law.
Next, the Court must address plaintiffs' claim for negligent hiring and retention. Plaintiff cites to Gaines v. Monsanto Co., 655 S.W.2d 568 (Mo.Ct.App.1983) as the definitive case for the cause of action for negligent hiring and retention. In Gaines, the Missouri Court of Appeals held that:
an employer may be directly liable for negligent hiring or negligent retention of an employee where the employer knew or should have known of the employee's dangerous proclivities and the employer's negligence was the proximate cause of the plaintiff's injury.
Id. at 570.
It is clear that in the present case, defendant Newman was not an employee, agent or servant of BSA. BSA neither selects or retains the adult volunteers who administer the programs. CAP is the locally chartered organization who selected and retained defendant Newman. In addition, CAP had the authority to discharge Newman if it so desired. BSA, therefore, did not exercise the control necessary to select or retain defendant Newman in order to establish plaintiffs' cause of action for negligent hiring or retention. Thus, it is the opinion of this Court that defendant BSA's Motion for Summary Judgment should be granted as to plaintiff's claim for negligent hiring and retention because there is no genuine issue of material fact and defendant BSA is entitled to judgment as a matter of law.