[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION MOTION FOR SUMMARY JUDGMENT
The facts as alleged in the amended complaint are as follows. on February 10, 1989, the plaintiff, Matthew Kosloff, attended a rollerskating event at the Middlebrook School in Trumbull, Connecticut. The event was sponsored by the defendant, Fairfield County Council of Boy Scouts America, Inc. [the "Fairfield BSA"], an affiliate of the defendant Boy Scouts of America, Inc. [the "BSA"], and supervised by the defendants, Raymond Garbatini "Garbatini"], Norman Doree ["Doree"] and William Russo ["Russo"]. The skating event was held at the Middlebrook School with the authorization of the defendants, Richard Witten ["Witten"], principal of the Middlebrook School, Ewin Merritt ["Merritt"], the Superintendent of Trumbull Public Schools, the Trumbull Board of Education and its members, Clare Hampford, Debra Hiller, Richard Sheiman, John Anrick, Arthur Kaiser, Michael Williams and Paul Timpanelli, CT Page 8901 Jr. [the "Board Members"].
While at the event, the plaintiff was injured when several other children fell on him. As a result of his injuries, the plaintiff filed a one-count complaint on February 20, 1991, against the defendants, the Fairfield BSA, the BSA, Garbatini, Doree, Russo, the Town of Trumbull, Witten, Merritt, the Trumbull Board of Education and the Board Members.
On January 7, 1992, the defendants, Witten, Merritt, the Trumbull Board of Education and the Board Members, filed a motion to dismiss the action. The defendant's motion to dismiss was denied by the court, Spear, J., on February 20, 1992.
Thereafter, the plaintiff filed an amended three-count complaint. The first count is a negligence claim directed at the defendants the Fairfield BSA, the BSA, Garbatini and Doree. The second count alleges a claim for negligence as to the defendants, Russo and the Town of Trumbull. The third count is a negligence claim against the defendants, Witten, Merritt, the Trumbull Board of Education and the Board Members. All of the defendants answered the complaint, and on July 6, 1992, the plaintiff filed a reply to the defendants' special defenses.
On July 20, 1992, the defendants, the Fairfield BSA and the BSA, filed a motion for summary judgment. In support of their motion for summary judgment the defendants submitted: a memorandum of law; an affidavit of Ronald Rogers, the Area Director, Northeast Region, of the BSA; and affidavit of Douglas Krofina, the Scout Executive of the Fairfield BSA; and an uncertified copy of deposition transcripts of Norman Doree and Raymond Garbatini. On August 19, 1992, the plaintiff filed a memorandum of law in opposition to the defendants' motion for summary judgment along with an uncertified copy of the deposition transcript of Douglas Krofina. On December 24, 1992, the defendants filed a memorandum of law in reply to the plaintiff's memorandum of law in opposition.
"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book 380." (Citation omitted.) Wilson v. New Haven, 213 Conn. 277,279, 567 A.2d 829 (1989). CT Page 8902
"In ruling on a motion for summary judgment the courts function is not to decide issues of material fact, but rather the determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 505, 538 A.2d 1031 (1988); see also Reid Reige v. Brainerd Cashman Ins. Agency, Inc., 26 Conn. App. 580, 584,602 A.2d 1051 (1992).
"In deciding a motion for summary judgment, the trial court must view the evidence in the light must favorable to the nonmoving party." Connecticut Bank Trust Co. v. Carriage Lane Associates, 219 Conn. 772, 781, 595 A.2d 334 (1991). "`The test is whether a party would be entitled to a directed verdict on the same facts.'" (Citation omitted.) Id.
The defendants, the Fairfield BSA and the BSA [hereinafter the "moving defendants"], move for summary judgment on the ground that the defendants, Garbatini and Doree, scout pack leaders, are not agents of the moving defendants, and therefore, the moving defendants cannot be held vicariously liable for the negligent acts of Garbatini and Doree. The moving defendants argue that they exercise no control over local boy scout packs or their local volunteer leaders and, more particularly, the defendants and cub scout pack #168. The moving defendants, therefore, assert that the negligent acts and/or omissions of local packs and their volunteer leaders cannot be imputed to the moving defendants under the theory of respondeat superior.
In opposition, the plaintiff first asserts that the existence of an agency relationship is a question of fact, and therefore, summary judgment is not appropriate. Second, the plaintiff argues that even if the moving defendants did not actually exercise any control over Garbatini or Doree, the moving defendants had the right to direct and control the activities of Garbatini and Doree, and therefore, an agency relationship exists.
"`Agency is defined as the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. . . . Restatement (Second, 1 Agency 1. McLaughlin v. Chicken Delight, Inc., 164 Conn. 317, 322,321 A.2d 456 (1973).'" First Charter National Bank v. Ross,29 Conn. App. 667, 672, 617 A.2d 909 (1992), quoting Beckenstein v. Potter Carrier, Inc., 191 Conn. 120, 132,464 A.2d 6 (1983). "`[T]he three elements required to show the existence of an agency relationship include: (1) a manifestation by the principal that CT Page 8903 the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control ot [of] the undertaking.'" (Citation omitted.) Id.
In general, "`[t]he existence of an agency relationship is a question of fact.'" Id., citing Beckenstein, supra, 133; Botticello v. Stefanovicz, 177 Conn. 22, 26, 411 A.2d 16 (1979), Conte v. Dwan Lincoln-Mercury, Inc., 172 Conn. 112, 124, 374 A.2d 14
(1976). However, where "the facts necessary to establish the existence of an agency relationship simply do not exist," summary judgment is appropriate. Law. v. Contento, Superior Court, Judicial District of Stamford/Norwalk at Stamford, Docket No. 11 48 84 (March 6, 1992, Rush, J.),
Some of the factors used in determining whether an agency relationship exists include:
 "whether the alleged principal has the right to direct and control the work of the agent; whether the agent is engaged in a distinct occupation; whether the principal or the agent supplies the instrumentalities, tools and the place of work; and the method of paying the agent."
First Charter National Bank, 673, quoting Beckenstein, supra, 133. "An essential factor in an agency relationship is the right of the principal to direct and control the performance of the work by the agent." (Citations omitted.) McLaughlin, supra, 132. There is no reported case of law Connecticut which addresses the issue of whether the BSA or its local council may be held vicariously liable for the negligent acts of volunteer pack leaders. However, other jurisdictions have addressed the issue and have found no liability on the part of the BSA or its local council. In Wilson v. St. Louis Area Council, Boy Scouts of America,845 S.W.2d 568 (Mo.App.E.D. 1992), the parents of a scout who was killed brought an action against the local council for the death of their son. Id., 570. The plaintiffs' son was electrocuted when an aluminum pipe he was playing with came into contact with 7200-volt power lines. Id. The plaintiffs' son was a member of Troop 392 of the BSA, and at the time of the accident, he was on a trip with the troop. Id. In upholding the trial court's granting of summary judgment in favor of the local council, the Wilson court stated that although "[c]entral in determining liability in the volunteer situation is control, or the right of the charitable organization to control, the activities of the volunteer. . . [t]here was [no] evidence CT Page 8904 that [the local council] either controlled or had the right to controlled the leaders' activities on the; trip to Fort Leonard Wood." Id. 571. Thus, the court held that "the leaders. . . were front the servants or agents of the [the local council] while participating in the program at Fort Leonard Wood." Id.
In Mauch v. Yissling, 56 Wash. App. 312, 783 P.2d 601 (1989), the parents of a deceased scout brought an action against the BSA and its local council for the death of their son. Id., 603. The scout was killed while riding with a scout leader in the leader's plane. Id. The court, upholding the trial court's granting of summary judgment, held that the BSA and its local council could not be held liable for the scout leader's negligence under an apparent authority theory. Id., 605. The court reasoned that since there was no evidence that either the BSA or the local council consented to or had control of the scout leader's actions, there was "no evidence of an act by the [the BSA or its local council] which would lead a reasonable person to believe [the scout leader] was acting with apparent authority." Id.
In McGarr v. Baltimore Area Council, Boy Scouts of America, Inc., 74 Md. App. 127, 536 A.2d 728 (1988), a mother and her scout son brought an action against the trip scout leader and the local council of by scouts for injuries incurred by the scout when he fell over a cliff while on a scout sponsored camping excursion. Id., 729. Although the court vacated the judgment and remanded the case for a new trial, the court found no error with the trial courts conclusion that the local council was not vicariously liable for the negligence of the scout leader. Id., 730. The court reasoned that the [Baltimore Area Council] is an umbrella organization; it charters individual trips and, as part of that annual process of initial chartering and charter renewal, tries to assure itself that the group will have responsible adult leadership. But it does not choose or in any way directly supervise the scoutmaster, who is selected by the troop. In these circumstances, it is generally held that the council is not vicariously liable for the negligence of the scoutmaster.
Id., 735, citing Young v. Boy Scouts of America, 9 Cal.App.2d 760,51 P.2d 191 (1935); Davis v. Shelton, 33 App.Div.2d 707,304 N.Y.S.2d 722 (1969); and Annotation, Liability of Charitable Organization Under Respondeat Superior Doctrine For Tort of Unpaid Volunteer. 82 A.L.R.3d 1213, 1224-25 (1978).
Although the Court finds the reasoning of the aforementioned CT Page 8905 courts persuasive, the defendants have not met their burden of showing that no questions of material fact exist. In order for a Court to grant at a motion for summary judgment, the affidavits and evidence submitted in support of the motion must demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. (Citations omitted.) Catz v. Rubenstein, 201 Conn. 39, 48, 513 A.2d 98 (1986).
The affidavits and documents submitted by the defendants in support of their motion for summary judgment establish that: (1) the BSA exercises no direct control over the day-to-day activities of the individual scout packs or leaders; (Affidavit of Ronald Rogers, 6); (2) the BSA did not control the rollerskating event involved in this action; Id. 8; (3) the BSA does not control the selection or training of local pack leaders; Id., 9; (4) the BSA does not supervise or operate any cub scout activities; Id., 7; (5) the Fairfield BSA exercises no control over the day-to-day activities of the individual scout packs or their leaders; (Affidavit of Douglas Krofina, 5); (6) the Fairfield BSA did not manage or control the rollerskating event involved in this action; Id., 8; and (7) the Fairfield BSA does not supervise or operate any cub activities. Id. 7.
An essential factor in an agency relationship is the right of the principal to direct and control the performance of the work of the agent. (Emphasis added.) (Citations omitted.) McLaughlin, supra, 132. None of the supporting documents address the issue of the either the BSA or the Fairfield BSA's right to control. Rather, said documents merely address whether or not either defendant actually exercised any control over the individual packs and their leaders. Accordingly, a question of material fact exists as to whether either the BSA or the Fairfield BSA had a right to control the activities of the scout leaders and, therefore, the defendants' motion for summary judgment is denied.
McKeever, J.